ASSOCIATION OF AMERICAN
MEDICAL COLLEGES,
Plaintiff,

v.

Hugh L. CAREY, Individually and as
Governor, et al., Defendants.

No. 79–CV–730.

United States District Court,
N.D. New York.

Jan. 12, 1990.

**874**

Fulbright & Jaworski (Robert A. Burgoyne, of counsel), Washington, D.C., for plaintiff.

Robert Abrams, Atty. Gen., State of N.Y. (David B. Roberts, Asst. Atty. Gen., of counsel), Albany, N.Y., for defendants.

## MEMORANDUM–DECISION AND ORDER

McCURN, Chief Judge.

### I. Introduction

The plaintiff is moving for summary judgment on its claims that portions of New York's Standardized Testing Act, N.Y.Educ.Law §§ 340–348, (generally known as the "Truth-in-Testing" Act), are (1) invalid due to preemption by federal copyright law and regulations, (2) infringe upon plaintiff's ownership rights under federal copyright law, or (3) violate the United States Constitution. Plaintiff, the Association of American Medical Colleges (the "AAMC"), seeks a declaratory judgment as well as a permanent injunction barring enforcement of what has been termed the "disclosure provisions" of the State Act. The AAMC is the copyright owner of the Medical College Admission Test (the "MCAT") as well as a number of MCAT related studies. The disclosure provisions, N.Y.Educ.Law §§ 341, 341–a, and 342, generally require the plaintiff to disclose MCAT test questions, answers, answer sheets, and related research reports which are employed by plaintiff as part of its sponsorship of the MCAT. In short, the plaintiff seeks to use federal copyright laws as a shield against enforcement of the State Act—thereby keeping the MCAT test questions secret. The central legal question presented is whether the disclosure requirements of New York's Standardized Testing Act clash with rights conferred upon plaintiff by the Federal Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, in a manner which compels this court to find the State Act invalid by virtue of the Supremacy Clause of the U.S. Constitution.

This matter has now been pending for almost a decade. Upon the plaintiff's Rule 65 application, this court, on January 21, 1980, preliminary enjoined the enforcement of N.Y.Educ.Law §§ 341 and 342 as against the plaintiff until resolution of this action. *Association of American Medical Colleges v. Carey*, 482 F.Supp. 1358, 1364 (N.D.N.Y.1980). The Standardized Testing Act has subsequently been amended, incorporating additional disclosure requirements which have also been challenged by the AAMC.

### II. Issue

The amended complaint asserts twelve separate causes of action against the Governor of the State of New York, the State Attorney General, the Board of Regents of the University of the State of New York, and New York's Commissioner of Education. The defendants have been found to be proper parties due to their enforcement responsibilities with respect to the education law. *See Association of American Medical Colleges v. Carey*, 482 F.Supp. at 1362–64.

The first five counts assert that the disclosure provisions are invalid because they encroach upon ownership rights granted to plaintiff by the Federal Copyright Act of 1976. *Count I* asserts that the challenged portions of the New York Standardized Testing Act conflict with the exclusive ownership rights granted to the plaintiff under the Federal Copyright Act, 17 U.S.C. § 106(1), (3), and (5), and are thereby preempted under the Supremacy Clause of the U.S. Constitution. Plaintiff also claims that the New York Act is preempted due to a conflict with validly promulgated federal copyright regulations. *Count II* alleges that defendants, by acting in accordance with the disclosure provisions of the New York Act, will compel the plaintiff to repro-

duce and distribute copyrighted MCAT test forms and studies, thereby aiding in the unauthorized distribution of these documents. By so doing, the defendants allegedly will be interfering in federal rights conferred by the Copyright Act—a statutory activity which plaintiff believes is expressly preempted by section 301 of the Copyright Act, 17 U.S.C. § 301(a). *Count III* alleges that the disputed provisions of the New York Act will require the plaintiff to disclose MCAT materials. This forced disclosure will allegedly constitute an infringement upon plaintiff's ownership rights in copyrighted material in violation of 17 U.S.C. § 501(a). *Count IV* asserts that the disclosure provisions of the New York Act will cause the defendants to engage in vicarious and contributory infringement upon plaintiff's ownership rights. *Count V* asserts that the New York Act will cause the defendants, as part of a governmental entity, to seize and expropriate the plaintiff's ownership rights, a violation of 17 U.S.C. § 201(e).

The remaining allegations of the complaint assert claims for relief under provisions of the Federal and State Constitutions. The parties, however, have focused their argument here on the merits of the copyright claims, agreeing that this court must attempt to resolve the statutory issues before reaching the constitutional causes of action. *See Hagans v. Lavine,* 415 U.S. 528, 543, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974). Defendants assert and plaintiff admits, see Plaintiff's Reply Memorandum of Law at 2, that the claims based on the New York State Constitution are not properly before this court. Therefore, Counts VII, VIII, X, and XII are dismissed.

### III. Legal Background

#### A. The Standardized Testing Act

The Standardized Testing Act imposes a number of obligations on organizations which develop or sponsor "any test that is given in New York at the expense of the test subject and [which is] designed for use

and is used in the process of selection for post-secondary or professional school admissions." N.Y.Educ.Law § 340(1). The Act specifically includes within its provisions the Medical College Admission Test. *Id.* It is undisputed that the AAMC is a "test agency" as that term is defined by § 340(4) of the Act and therefore properly subject to its dictates.[1] In this action plaintiff is challenging the disclosure provisions of the Truth in Testing Act, namely sections 341, 341–a, and 342.

Section 341 (entitled "Background reports") requires that "[w]henever any test agency prepares or causes to have prepared research which is used in any study, evaluation or statistical report pertaining to a test operational after January first, nineteen hundred eighty, such study, evaluation or report shall be filed" with the New York State Commissioner of Education ("the Commissioner"). *Id.* at § 341(1). These reports must have all information with respect to a test subject or user institution redacted from the document. *Id.* at § 341(2). All testing agencies, within thirty days after the results of a standardized test are released, must also file with the Commissioner (1) a copy of all test questions *actually used* in calculating a test taker's raw score (experimental or developmental questions are excluded from disclosure), (2) the correct answers to these questions, and (3) the rules governing the method by which a raw score is calculated along with an explanation of these rules. *Id.* at § 342(1).

Within ninety days after the filing required by § 342(1), the test agency must provide a test taker with the "opportunity to secure" (1) a copy of the test questions used to calculate the test subject's raw score, (2) a copy of the test subject's answer sheet along with a copy of the correct answers, and (3) the test subject's raw score. *Id.* at § 342(2). Due to a concern that standardized tests may be biased in some manner, section 341–a was added to the Standardized Testing Act in 1987. This provision requires the testing agency to

---

**1.** The AAMC has contracted with the American Institutes for Research in the Behavioral Sciences to develop and test MCAT questions. The exam is actually administered, again through contract, by the American College Testing Program.

prepare detailed statistical reports—categorized by race, ethnicity, gender and linguistic background—relating to performance on tests and test questions given between July 1, 1988, and July 1, 1989. *Id.* at §§ 341–a(4), 341–a(5). These reports are to be filed with a ten-person advisory committee to the state legislature not later than September 1, 1989. The advisory committee, in turn, is required to report to the legislature. *Id.* at §§ 341–a(5), 346–a. "Any test agency which violates any section of [the Act] shall be liable for a civil penalty of not more than five hundred dollars for each violation." *Id.* at § 347. It should be noted that the Standardized Testing Act only applies to exams administered within New York. *Id.* at § 340(1).

The disclosure provisions of the Act designate all documents filed with the Commissioner of Education or with the legislative advisory committee as "public records." The parties do not dispute that the New York Freedom of Information Law ("FOIL"), N.Y.Pub.Off.Law § 84 *et seq.*, provides that all documents designated as "public records" must be made available to the public for inspection upon request. *Id.* at § 87(2). Therefore, as plaintiff points out, the Truth in Testing Act, if applied, would make MCAT test questions available to the Commissioner of Education, the examinees, the legislative advisory committee, and the general public. It would also make these materials available for review by organizations engaged in the business of coaching students for the MCAT.

## B. The Copyright Act of 1976

Congress, through the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, set out to "accomplish a fundamental and significant change" in the law of copyright.[2] "Instead of a dual system of 'common law copyright' for unpublished works and statutory copyright for published works, which ha[d] been the system in effect in the United States since the first copyright statute in 1790, the bill adopte[d] a single system of Federal statutory copyright from creation." Committee on the Judiciary, House Report No. 94–1476, U.S.Code Cong. & Admin. News 1976, p. 5659, *reprinted in* 17 U.S. C.A. § 301 (West 1989). *See also Roth v. Pritikin,* 710 F.2d 934, 938–39 (2nd Cir.), *cert. denied,* 464 U.S. 961, 104 S.Ct. 394, 78 L.Ed.2d 337 (1983) (legislative history). Part and parcel of this new federal copyright scheme was the express preemption provision of 17 U.S.C. § 301 which, through its terms and the legislative history surrounding its enactment, "makes clear a congressional intent to preempt previous law and replace the labyrinth of statutory and common law authority with a single, generally applicable federal statute." *Roth v. Pritikin,* 710 F.2d at 938.

The scope of federal copyright protection extends to "original works of authorship fixed in any tangible medium of expression, now known or later developed, from which they can be perceived, reproduced, or otherwise communicated, either directly or with the aid of a machine or device." 17 U.S.C. § 102(a). Included within the protection of the Copyright Act are products of authorship such as literary, musical, or dramatic works, *id.* at § 102(a), as well as compilations and derivative works, *id.* at § 103. Compilations and derivative works are defined as works "formed by the collection and assembling of preexisting materials or of data that are selected, coordinated or arranged in such a way that the resulting work as a whole constitutes an original work of authorship." *Id.* at § 101. However, facts, ideas, and concepts themselves are not provided copyright protection. 17 U.S.C. § 102(b); *see Financial Information Inc. v. Moody's Investors Service Inc.,* 808 F.2d 204, 207 (2nd Cir.1986), *cert. denied,* 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987).

---

**2.** Art. I, § 8, cl. 8 of the U.S. Constitution has served as the source of federal authority to promulgate copyright law, empowering Congress "[t]o promote the Progress of Science and useful Arts, by securing for limited Times to Authors and Inventors the exclusive Right to their respective Writings and Discoveries." *See Sears, Roebuck & Co. v. Stiffel Company,* 376 U.S. 225, 228, 84 S.Ct. 784, 786, 11 L.Ed.2d 661, *reh'g den.* 376 U.S. 973, 84 S.Ct. 1131, 12 L.Ed.2d 87 (1964).

Plaintiff owns a registered copyright to the MCAT and many of the MCAT-related studies which are subject to the disclosure provisions of the State Act. "Section 106 of the Copyright Act confers a bundle of *exclusive* rights to the owner of the copyright. Under the Copyright Act, these rights—to publish, copy, and distribute the author's work—vest in the author of an original work from the time of its creation." *Harper & Row Publishers v. Nation Enterprises,* 471 U.S. 539, 547, 105 S.Ct. 2218, 2223, 85 L.Ed.2d 588 (1985) (emphasis added).[3] Simply put, plaintiff claims that the State Act interferes with its exclusive federal rights.

There are, however, statutory exceptions to the copyright owner's rights, *see* 17 U.S.C. §§ 107–118, two of which have been raised by the defendants in response to plaintiff's copyright claims. The first affirmative defense is raised pursuant to section 107 which "codifies the traditional privilege of other authors to make 'fair use' of an earlier writer's work." *Harper & Row,* 471 U.S. at 547, 105 S.Ct. at 2223. The second affirmative defense is raised pursuant to section 108 of the Copyright Act (entitled "Limitations on exclusive rights: Reproduction by libraries and archives") which permits archives to engage in limited reproduction and distribution of copyrighted works. The archive provision is potentially relevant due to a 1980 amendment to the State Act which designates the State Education Department an archive with respect to standardized tests. *See* N.Y.Educ.Law § 342(7).

## IV. Factual Background

The assertions made in plaintiff's statement of "material facts as to which there is no genuine issue," submitted pursuant to Local Rule 10(j) of the Northern District of New York, have gone largely undisputed

by the defendants. Defendants' 10(j) statement, on the other hand, lists a number of issues, for the most part legal in nature, which they believe must be resolved at a trial. The defendants do, however, submit an affidavit from their expert witness, Dr. Walter Haney, in which some of the factual assertions presented by the plaintiff are contested to some degree.

Plaintiff, the American Association of Medical Colleges, is a non-profit association whose members include numerous colleges of medicine, teaching hospitals, academic societies, and individuals. One aspect of AAMC's activities is the sponsorship of the Medical College Achievement Test. The MCAT is widely used by medical colleges as a measure of the academic achievement of applicants to their institutions. According to the defendants, this exam acts, more or less, as a "gatekeeper" to medical school. The MCAT tests potential medical students on 54 academic subtopics which the AAMC believes to be relevant when determining an individual's potential for success in medical school. Approximately 3,170 examinees in 32 test centers took the MCAT in New York in 1987. Beyond the MCAT itself, the AAMC also authors and commissions various MCAT related studies as part of its sponsorship and continued development of the exam. The AAMC asserts, and the defendants do not dispute, that the development of quality exams involves significant investments of both time and money.

The plaintiff makes extensive efforts to keep the MCAT secure from disclosure to the general public. It is undisputed that the AAMC neither publishes nor distributes the MCAT beyond the administration of the exam to examinees. Stringent security measures govern the assembly, printing, and distribution of the test booklets, admis-

---

**3.** The text of 17 U.S.C. § 106 ("Exclusive rights in copyrighted works") reads in applicable part as follows:

Subject to sections 107 through 118, the owner of copyright under this title has the exclusive rights to do and to authorize any of the following:

(1) to reproduce the copyrighted work in *copies or phonorecords;*

(2) to prepare derivative works based upon the copyrighted work;

(3) to distribute copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending. . . .

sion to test centers, and collection and accounting of test booklets. The AAMC owns copyrights in the MCAT test forms, test questions, and answer sheets, as well as in some of the MCAT-related studies which contain past or potential MCAT questions. An important fact is that the AAMC frequently re-uses test questions from past exams. All these copyrighted documents would be made available to review by the general public if the AAMC was required to comply with the disclosure provisions of N.Y.Educ.Law §§ 341, 341–a, and 342. However, MCAT test questions which have yet to be used in the actual calculation of an examinee's grade would not be subject to disclosure. A detailed description of the MCAT, including the process by which it is developed and administered, is contained in *Association of American Medical Colleges v. Mikaelian,* 571 F.Supp. 144, 145–48 (E.D.Pa.1983), *aff'd,* 734 F.2d 3 (3rd Cir.1984). The description found in *Mikaelian* is largely consistent with the undisputed facts presented to this court.

Plaintiff's central factual assertion is that disclosure of MCAT test questions would make impossible the reuse of test questions—thereby diminishing or destroying the value of these documents. In response, the defendants' expert witness forwards the opinion that "under certain circumstances it is entirely possible that previously disclosed [questions] might be validly reused." *Affidavit* Haney, par. 5–6. This would be so, according to Dr. Haney, in situations where there is a broad disclosure of test questions which, over time, would dilute the available market of practice questions so much so that selected past questions could be used again. Plaintiff, for its part, asserts flatly that no disclosed questions could or would be reused.

There is also some contention between the parties over whether the disclosure of the test questions would seriously deplete a "finite pool" of potential test questions—particularly with respect to the areas of general science. The defendants also point out that test agencies which administer other standardized tests, such as the Law School Admissions Test and Scholastic Aptitude Test, have complied with the Act's disclosure requirement without causing any serious injury to the quality of those exams. The parties also dispute the degree to which disclosure of the text of the MCAT will harm the AAMC's ability to equate the results of one exam with that of past exams—apparently an important criterion in evaluating the accuracy of a standardized test over time. Of course, all properly disputed factual issues must be viewed in the light most favorable to the party opposing summary judgment. In any event, plaintiff asserts that the fact that the State Act will cause disclosure of the copyrighted MCAT questions, with a result that the AAMC will not be free to reuse these questions on later exams, is the key undisputed fact which will allow this court to grant summary judgment as a matter of law.

## V. Discussion
### Summary Judgment Standard

It is appropriate to grant summary judgment when the record viewed in the light most favorable to the non-moving party presents a situation where there "is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986); *United States v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962). To survive such a motion, the party opposing summary judgment must provide the court with " 'concrete evidence from which a reasonable [trier of fact] could return a verdict in his favor.' " *Dister v. Continental Group, Inc.,* 859 F.2d 1108, 1114 (2nd Cir. 1988) (quoting *Anderson v. Liberty Lobby,* 477 U.S. at 256, 106 S.Ct. at 2509).

### Federal Preemption

Under the Supremacy Clause of the United States Constitution,[4] the authority of

---

4. The Supremacy Clause, U.S. Const. Art. VI, cl. 2. states:

This Constitution and the Laws of the United States ... shall be the supreme Law of the

state law must yield to validly enacted federal statutes and regulations with which state law conflicts. This has generally been termed federal preemption. Plaintiff asserts numerous legal theories under which it believes the disclosure provisions of the Standardized Testing Act should be held invalid as preempted by federal law. The Second Circuit, in *Darling v. Mobil Oil Corp.*, 864 F.2d 981 (2nd Cir.1989), recently summarized the various ways in which federal law can preempt state law. The court stated:

> Under the Supremacy Clause of Article VI federal law may preempt state or local law in at least three ways.... First, Congress may in express terms declare its intention to preclude state regulation in a given area.... Second, in the absence of an express declaration, preemption may be implied when the federal law is "sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementing state regulation." ... Of course, "courts should not lightly infer preemption." ... Finally, state law may be preempted "to the extent that it actually conflicts with a valid federal statute." ... "Conflict preemption" may occur either when "compliance with both federal and state regulations is a physical impossibility," ... or where state law "stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress." ...
>
> A determination that federal law preempts a state statute should be reached in a careful and judicious manner to avoid unwarranted disruption of important state policies.... In areas traditionally regulated by state law, "we

start with the assumption that the historic police powers of the States were not superseded by the Federal Act unless that was the clear and manifest purpose of Congress."

*Id.* at 985–86 (citations omitted). With respect to the particular issue before this court, it is clear that "a state may neither abrogate nor in any way diminish the federally granted and protected rights of a copyright holder." *Mills Music, Inc. v. Arizona*, 591 F.2d 1278, 1285 (9th Cir. 1979); *see also Bell v. Combined Registry Co.*, 397 F.Supp. 1241, 1245 (N.D.Ill.1975) ("the operation of state law cannot defeat the validity of a federal copyright"), *aff'd* 536 F.2d 164 (7th Cir.), *cert. denied*, 429 U.S. 1001, 97 S.Ct. 530, 50 L.Ed.2d 612 (1976); 17 U.S.C. § 201.[5]

*Conflict Preemption and Federal Copyright*

▆▆▆ The AAMC asserts that the most clear cut legal basis upon which this court could find the disclosure provisions of the State Act preempted is what has been termed "conflict preemption." This type of preemption "may occur either when 'compliance with both federal and state regulations is a physical impossibility,' ... or where state law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Darling v. Mobil Oil Corp.*, 864 F.2d at 985–86. The federal copyright and patent law is "the supreme law of the land.... When state law touches upon the area of those federal statutes, it is 'familiar doctrine' that the federal policy 'may not be set at naught, *or its benefits denied*' by state law." *Sears, Roebuck & Co. v. Stif-*

---

Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.

5. Courts have been willing to hold state laws invalid as preempted by the Federal Copyright Act on numerous occasions. *See e.g., Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 710–11, 104 S.Ct. 2694, 2706, 81 L.Ed.2d 580 (1984) (Oklahoma statute that banned cable operators from carrying out-of-state alcoholic beverage advertising preempted by federal law because, among other things, the state statute interfered

with right granted cable operators by the Copyright Act.); *Financial Information Inc. v. Moody's Investors Service*, 808 F.2d 204, 208 (2nd Cir.1986), *cert. denied*, 484 U.S. 820, 108 S.Ct. 79, 98 L.Ed.2d 42 (1987) (publisher's state law misappropriation claim preempted by Copyright Act); *Walker v. Time Life Films, Inc.*, 784 F.2d 44, 53 (2nd Cir.), *cert. denied*, 476 U.S. 1159, 106 S.Ct. 2278, 90 L.Ed.2d 721 (1986) (state law cause of action for unfair competition is preempted by the federal copyright laws to the extent it seeks protection against copying of a book).

*fel Co.,* 376 U.S. 225, 229, 84 S.Ct. 784, 787, 11 L.Ed.2d 661 (1964) (emphasis added, citations omitted). Just as a "State cannot encroach upon the federal patent law directly," *id.* at 231, 84 S.Ct. at 788, it may not encroach upon federal copyright law. *See Goldstein v. California,* 412 U.S. 546, 559, 93 S.Ct. 2303, 2311, 37 L.Ed.2d 163 (1973) (with respect to copyright laws, a State may not "[attempt] to protect that which Congress intended to be free from restraint or to free that which Congress ha[s] protected"). *See also* 1 *Nimmer on Copyright,* § 101[B] at 1–12 n. 43.2 ("A state law is preempted whether it 'creates, grants or destroys' rights which are 'equivalent' to the exclusive rights of copyright"). Therefore, a state law which safeguards or injures property rights protected by the Federal Copyright Act is preempted. It is plaintiff's position that the New York Act is preempted because it operates to deny the AAMC benefits which are conferred by 17 U.S.C. § 106 of the Federal Copyright Act.[6]

*Subject Matter of Copyright*

■ As an initial matter it is clear to the court that the MCAT and the various MCAT related reports and studies, which have been copyrighted by the plaintiff and which are subject to disclosure under the New York Truth in Testing Act, N.Y. Educ.Law §§ 341, 341–a, and 342, are well within the "subject matter" of the Federal Copyright Act of 1976. *See* 17 U.S.C. §§ 102 and 103 (discussed previously); *Association of American Medical Colleges v.*

*Mikaelian,* 571 F.Supp. 144, 150 (1983) *aff'd,* 734 F.2d 3 (3rd Cir.1984) (finding that the MCAT is within the subject matter of Federal Copyright law); *see also Educational Testing Servs. v. Katzman,* 793 F.2d 533, 539 (3rd Cir.1986) (Scholastic Aptitude Test and Achievement Test are "original works of authorship" within the meaning of federal copyright laws 17 U.S.C. § 102(a) and "compilations" within the meaning of § 103); *National Conference of Bar Examiners v. Multistate Legal Studies, Inc.,* 692 F.2d 478, 484 n. 6 (7th Cir.) (the Multistate Bar Exam, as "confidential creative material," was a "secure test" to which it was likely that "Congress intended the Copyright Act to afford protection"), *cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *Applied Innovations Inc., v. Regents of the Univ. of Minn.,* 876 F.2d 626, 635 (8th Cir.1989) (psychological tests within the subject matter of copyright). The rationale and reasoning presented in these cases leads this court to conclude that the studies and research reports which have been copyrighted by the AAMC and which contain MCAT exam questions are within the subject matter of the Federal Copyright Act. The defendants have not contested plaintiff's assertion that the AAMC has complied with the Copyright Act's registration requirements. *See* 17 U.S.C. § 408. Since this court has found the MCAT materials to be within the subject matter of copyright, to the extent defendants contend that the MCAT material is somehow not validly copyrighted, their contention is rejected.

---

**6.** There are the numerous instances in which state law has been declared invalid as preempted by federal patent law. It is "appropriate to refer" to patent cases when conducting an analysis under the Copyright Act due to "the historic kinship between patent law and copyright law." *Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 439, 104 S.Ct. 774, 787, 78 L.Ed.2d 574 (1984). Recently, the Supreme Court held a Florida statute, which prohibited the use of a particular manufacturing process in the duplication of unpatented boat hulls, invalid as preempted by federal patent law. *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,* —— U.S. ——, 109 S.Ct. 971, 103 L.Ed.2d 118 (1989). The Court held that the state law operated to regulate an area which Congress decided to leave free to open competition—that is, the full use by

all of ideas and designs which are unpatented or unpatentable, and therefore within the public domain. *See also Sears, Roebuck & Co. v. Stiffel Co.,* 376 U.S. 225, 84 S.Ct. 784, 11 L.Ed.2d 661 (1964) (Illinois unfair competition law preempted by patent law because copied article was unpatentable and thus could be "made and sold by whoever chooses to do so," *id.* at 231, 84 S.Ct. at 788.); *Compco Corp. v. Day–Brite Lighting, Inc.,* 376 U.S. 234, 84 S.Ct. 779, 11 L.Ed.2d 669 (1964) (same). However, the *Bonito Boats* court was careful to point out that state laws, such as those which prevent deceptive simulation of another's product so as to prevent consumer confusion or protect trade secrets, are proper exercises of state authority so long as the "nature and degree of state protection does not conflict with federal policies." 109 S.Ct. at 979–80.

*State Law Conflict With § 106 Rights*

The MCAT and the MCAT-related research reports are within the subject matter of federal copyright law. Moreover, it is not disputed that the AAMC owns valid copyrights to this material. Therefore, barring a statutory exception, 17 U.S.C. § 106 will confer upon the plaintiff the exclusive right to publish, copy, and distribute these materials, as well as to prepare derivative works with respect to these documents. *See Harper & Row Publishers v. Nation Enterprises,* 471 U.S. 539, 547, 105 S.Ct. 2218, 2223, 85 L.Ed.2d 588 (1985). The dictates of the Standardized Testing Act would interfere with the AAMC's exclusive ownership rights as outlined in § 106 of the Federal Copyright Act. As already discussed, the New York statute will require the AAMC as owner of a copyrighted standardized test to disclose an exam which it wishes to retain as confidential. The State Act will also make the disclosed MCAT materials "public records" with respect to New York's Freedom of Information Law, and therefore subject these documents to reproduction and disclosure to members of the public. As such, unless the disclosure provisions of the New York statute fall into an exception to the exclusive rights of a copyright owner, those provisions will directly conflict with federal law and thereby be preempted. Defendants' central contention is that "New York's Standardized Testing Act does not conflict with and frustrate the objectives of federal law, because it is tailored to fit within the fair use and archive exceptions of the Copyright Act." Defendants' Mem. at 15.

*The Fair Use Defense*

The defendants contend that the disclosure required by the Standardized Testing Act is properly characterized as a fair use. As such, the State Act cannot be preempted—the "use" being within a statutory exception to the exclusivity of ownership rights outlined in 17 U.S.C. § 106. If the disclosure required by the State Act constitutes a "use" within the "fair use" exception of § 107 of the Federal Copyright Act, then the State Act does not conflict with,

and is not preempted by, federal copyright law. The drafters of section 107 viewed the fair use exception to the Copyright Act as an affirmative defense; the party asserting the exception, therefore, bears the burden of production and persuasion to show that the exception applies. *See Harper & Row,* 471 U.S. at 561, 105 S.Ct. at 2231; *Maxtone-Graham v. Burtchaell,* 803 F.2d 1253, 1255 (2nd Cir.1986), *cert. denied,* 481 U.S. 1059, 107 S.Ct. 2201, 95 L.Ed.2d 856 (1987); *Mikaelian,* 571 F.Supp. at 151.

Section 107 ("Limitations on exclusive rights: Fair use") states:

> Notwithstanding the provisions of section 106, the fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes *such as criticism, comment,* news reporting, teaching (including multiple copies for classroom use), scholarship, or *research,* is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

(Emphasis added). "The factors enumerated in [section 107] are not meant to be exclusive: '[S]ince the doctrine [of fair use] is an equitable rule of reason, no generally applicable definition is possible, and each case raising the question must be decided on its own facts.'" *Harper & Row,* 471 U.S. at 560, 105 S.Ct. at 2230; *see also Iowa State Univ. Research Foundation v. American Broadcasting,* 621 F.2d 57, 60 (2nd Cir.1980).

The issue of whether a use of a copyrighted work is a fair use "is a mixed

question of law and fact." *Id.* As a result, "the appraisal of these four factors in a particular case is obviously a fact specific inquiry for which summary judgment is ill-suited." *Diamond v. Am–Law Publishing Corp.*, 745 F.2d 142, 147 (2nd Cir.1984) (citing *DC Comics v. Reel Fantasy, Inc.*, 696 F.2d 24 (2nd Cir.1982)). However, "[c]ourts in this Circuit have approved the resolution of the fair use question at the summary judgment stage on several occasions." *Maxtone–Graham v. Burtchaell,* 803 F.2d 1253, 1258 (2nd Cir.1986) (finding in favor of a party who had raised a fair use defense), *cert. denied,* 481 U.S. 1059, 107 S.Ct. 2201, 95 L.Ed.2d 856 (1987). " '[T]he mere fact that a determination of the fair use question requires an examination of the specific facts of each case does not necessarily mean that in each case involving fair use there are facts *to be tried.*' " *Id.* (quoting *Meeropol v. Nizer,* 417 F.Supp. 1201, 1208 (S.D.N.Y.1976)).

As a general matter the fair use doctrine operates to permit uses of copyrighted material to which a "reasonable copyright owner would have consented." *Harper & Row,* 471 U.S. at 550, 105 S.Ct. at 2225. It is an "equitable rule of reason," *Sony Corp. of America v. Universal City Studios, Inc.,* 464 U.S. at 448, 104 S.Ct. at 792, which "permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Iowa State Univ. Research Foundation,* 621 F.2d at 60. When analyzing a fair use issue courts have generally employed the four-part statutory analysis contained in § 107. As an initial matter, however, it is clear that the "use" envisioned by the disclosure provisions of the State Act would be for one of the activities enunciated in section 107, that is, for "criticism," "comment," or "research." Therefore, the "use" to which the State of New York would put the MCAT materials is for a purpose that meets with the threshold requirement set out in § 107's introductory paragraph.

*Fair Use Cases.* The tension between the Copyright Act's dual goals of greater access to information and its provision for exclusivity of ownership rights makes the question of fair use " 'the most troublesome in the whole law of copyright.' " *Maxtone–Graham v. Burtchaell,* 803 F.2d at 1255 (quoting *Dellar v. Samuel Goldwyn, Inc.,* 104 F.2d 661, 662 (2nd Cir. 1939)). Therefore, as a predicate to the four-part analysis it is helpful to review some of pertinent cases which have applied the fair use doctrine.

Commercial infringement on the AAMC's copyright in the MCAT was addressed in *Association of American Medical Colleges v. Mikaelian,* 571 F.Supp. 144 (E.D.Pa. 1983), *aff'd,* 734 F.2d 3 (3rd Cir.1984). There, the same plaintiff as the one in the present action claimed copyright infringement by an individual who was engaged in the business of preparing students to take the MCAT. The court found clear, if not overwhelming, evidence that defendant Mikaelian had made verbatim copies of hundreds of MCAT exam questions and distributed them to persons enrolled in his course. The court held that the MCAT was within the subject matter of federal copyright law and that the owners of the MCAT copyright were entitled, pursuant to § 106, to the exclusive rights of ownership. Despite finding that it was highly unlikely that the commercial use to which the defendant sought to subject the MCAT was even covered by the fair use doctrine, the court went on to consider and reject the defendant's fair use defense. The court held that the commercial nature of the defendant's use, the massive size of the appropriation of MCAT material, the strict security employed to prevent test disclosure, the unfair advantage conferred upon those students in the test coaching course, and the destruction in the value of the copyrighted materials, were strong factors weighing against a finding of fair use. *Id.* at 152–53. A similar analysis is found in *Educational Testing Services v. Katzman,* 793 F.2d 533 (3rd Cir.1986), with respect to a test-coaching company's use of copies of the Scholastic Aptitude Test and the Achievement Tests.

The most comprehensive Supreme Court decision concerning the fair use doctrine is *Harper & Row Publishers v. Nation En-*

*terprises,* 471 U.S. 539, 105 S.Ct. 2218, 85 L.Ed.2d 588 (1985). There the Court held that a news magazine's use of approximately 300 words from the *unpublished* manuscript of President Ford's autobiography constituted a copyright infringement to which the fair use doctrine did not apply. The 300–word excerpt from the book-length manuscript was found to have been the "heart" of the book, publication of which directly injured the marketability of the document. *Id.* at 569, 105 S.Ct. at 2235. However, the Court in *Sony Corp. v. Universal City Studios, Inc.,* 464 U.S. 417, 104 S.Ct. 774, 78 L.Ed.2d 574 (1984), held that the manufacturer of video tape recorders could not be held liable for copyright infringement. The noncommercial taping of copyrighted television programming for home use was found to be a "fair use" of the material. In *Capital Cities Cable, Inc. v. Crisp,* 467 U.S. 691, 104 S.Ct. 2694, 81 L.Ed.2d 580 (1984), an Oklahoma statute that banned cable operators from carrying out-of-state alcoholic beverage advertising was held to be preempted by federal law because, among other things, the state statute interfered with rights granted cable operators by the Copyright Act. *Id.* at 710–11, 104 S.Ct. at 2706.

A lively debate was touched off by the Second Circuit's recent decision in *New Era Publications Int'l. v. Henry Holt & Co.,* 873 F.2d 576 (2nd Cir.), *reh'g* and *reh'g in banc denied,* 884 F.2d 659 (2nd Cir.1989). The plaintiff in *New Era* held a copyright in the published and unpublished writings of L. Ron Hubbard, the founder of the Church of Scientology. The defendant published a scathing biography of the late Mr. Hubbard which included extensive reproduction of Hubbard's published and unpublished writings. Defendant responded to plaintiff's claim of copyright infringement by raising the defense of fair use. The district court held that the vast majority of the copied material was fairly used— with money damages, rather than an injunction, granted as a remedy for that small portion of unpublished copyrighted material which was found to be outside of the fair use exception. The panel majority affirmed the district court's decision on the

basis of laches. However, the panel majority went on to express strong "disagreement with a great deal of what is said in the [lower court's] opinion" concerning the doctrine of fair use as it applied to unpublished material. *New Era,* 873 F.2d at 583.

With respect to the first fair use factor, the "purpose and character of the use," the *New Era* majority appeared to be of the opinion that differences in degree, that is, differences in the substance or importance of the work as viewed by the court, are of no weight in a fair use analysis. Rather, once the work can be classified as " 'criticism,' 'scholarship' or 'research' " the analysis ends and the "factor cuts in favor of the book's publisher." *Id.; see also New Era,* 884 F.2d at 661 (concurrence in denial of rehearing *in banc*) ("If a book falls into one of these categories, assessment of the first fair use factor should be at an end"). In regard to the second fair use factor, "the nature of the copyrighted work," the panel majority stated that "unpublished works normally enjoy complete protection" and therefore, "[w]here use is made of materials of an 'unpublished nature,' the second fair use factor has yet to be applied in favor of an infringer." *New Era,* 873 F.2d at 583. The majority also found the second factor to weigh "heavily" in favor of the copyright holder. *Id.*

Notwithstanding the well reasoned concurrence in *New Era,* and the views expressed by a number of the judges of the Second Circuit that the fair use analysis contained in *New Era* is arguably dicta, *see New Era,* 884 F.2d at 662 (dissent from denial of rehearing *in banc*) the decision can properly be read as instructing district courts to give little extra regard to an "important" use—even one of great public benefit—beyond that given a work of "ordinary" comment and criticism. Moreover, absent extraordinary circumstance, works unpublished in nature are to receive complete copyright protection. While these narrow rules would appear to be inconsistent with the equitable nature of the fair use analysis, this court is bound to follow them.

Finally, in *Salinger v. Random House, Inc.*, 811 F.2d 90 (2nd Cir.1987), the Second Circuit granted the plaintiff's request for a preliminary injunction barring the publication of a biography of the famous author. The *Salinger* court found that the manuscript quoted and paraphrased portions of the plaintiff's unpublished letters sufficient to constitute a violation of federal copyright law notwithstanding defendants' assertion of a fair use defense. *Id.* at 100. In making its determination, the court placed special emphasis on what it found to be the unpublished nature of the letters. *Id.* at 95–96. The letters were deemed to be unpublished even though they were kept by libraries through which the public could review the contents of the letters subject to restrictions of federal copyright law. *Id.* at 97.

*Fair Use Analysis.* In light of this background the court now turns to the four-factor fair use analysis.

■ *A. Purpose of the Use.* Congress requires courts to take into account "the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes." 17 U.S.C. § 107(1). "The nature of the interest at stake is highly relevant to whether a given use is fair." *Harper & Row*, 471 U.S. at 553, 105 S.Ct. at 2226. The fair use defense is more properly raised by litigants who use copyrighted material for non-commercial comment, research, and criticism, as opposed to those who employ such material in commercial, profit-oriented, activity. 17 U.S.C. § 107(1); *see Harper & Row*, 471 U.S. at 562, 105 S.Ct. at 2231 (1985); *Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 449, 104 S.Ct. 774, 792, 78 L.Ed.2d 574 (1984) ("commercial use of copyrighted material is presumptively ... unfair" while the "contrary presumption is appropriate" in the case of "noncommer-

cial, nonprofit activity."); *Iowa State Univ. Research Foundation v. American Broadcasting*, 621 F.2d 57, 61 (2nd Cir.1980); *Mikaelian*, 571 F.Supp. at 152–53.

■ The common name of the N.Y. Educ.Law § 340 *et seq.*, the "Truth in Testing Act," says much about its purpose. It is clear that the goal of the State Act is to subject the MCAT to non-commercial comment and criticism. The defendants assert that it is particularly important to subject the MCAT to disclosure because it is "not simply some literary creation over which AAMC claims exclusive ownership. It is a vehicle by which the AAMC exercises a monopoly over the screening process which determines the select few who are admitted to medical school." Defendants' Mem. at 13–14. The disclosure provisions, according to the defendants, are a legitimate exercise of police power to "open up" a process that has a major impact on the careers of many students. Furthermore, defendants assert that "[t]he law is intended to serve the public interest in the validity and objectivity of tests, to encourage development of better test instruments, and to assure the accuracy of the scoring process." Defendants' Mem. at 3.

With reference to N.Y.Educ.Law § 341–a, defendants also contend that the purpose of the use is to review whether the MCAT has a discriminatory impact on test takers who are women and minorities. Section 341–a of the State Act requires the AAMC to prepare statistical reports on test performance with respect to race, sex, ethnicity, and linguistic background, and to provide the report to an advisory committee to the state legislature. Defendants assert that the State of New York has a clear interest, encompassed in "fair use" principles, which permits it to require the AAMC to develop and disclose reports which may expose a disparate impact on women and minorities who take the test.[7]

---

7. Plaintiff also asserts that the forced disclosure of the MCAT and MCAT-related material would be an involuntary governmental seizure of copyrighted material by the State of New York in violation of 17 U.S.C. § 201(e). Section 201(e) states:

When an individual author's ownership of a copyright, or of any of the exclusive rights under a copyright, has not previously been transferred voluntarily by that individual author, no action by any government body or other official or organization purporting to seize, expropriate, transfer, or exercise rights

This court has determined, and plaintiff concedes, that the strong public purpose served by the Standardized Testing Act causes the first factor to cut clearly in favor of the defendants.

■ B. *Nature of the Copyrighted Work.* Generally, a copyrighted work which is both published and factual in nature is more properly subject to a fair use than an unpublished work that is fictional in nature, the "unpublished nature of a work ... [being a] 'key though not necessarily determinative factor' tending to negate a defense of fair use" and "[t]he law generally recogniz[ing] a greater need to disseminate factual works than works of fiction or fantasy." *Harper & Row,* 471 U.S. at 554, 555, 563, 105 S.Ct. at 2227, 2232; *see also* 3 *Nimmer on Copyright* § 13.05, at 13–62, n. 2. With respect to works unpublished in "nature" the Supreme Court noted that a copyright owner's rights encompassed "not only the choice of 'when,' 'where,' and 'in what form,' " to publish, but "whether to publish at all." *Harper & Row,* 471 U.S. at 564, 105 S.Ct. at 2232.[8] In *Educational Testing Services v. Katzman,* the Third Circuit held that the "unique nature of secure tests means that *any use* is destructive" of the copyright owner's rights under federal law. 793 F.2d 533, 543 (3rd Cir.1986). In *National Conference of Bar Examiners v. Multistate Legal Studies,* the Seventh Circuit "agree[d] with the Register of Copy-

rights that the [Multistate Bar Exam] would probably be classified as an *unpublished* work under 17 U.S.C. § 101." 692 F.2d at 486 n. 8 (emphasis added).

While admitting that the MCAT is an "unpublished" work, the defendants assert that this court should not place too much emphasis on the published/unpublished distinction because that analysis was developed in cases which reviewed charges of infringement of works which were going to be made public at a later date. The plaintiff here, as defendants point out, is attempting to use the copyright laws to shield the MCAT from meaningful public scrutiny. This court agrees that it would be hard pressed to provide an example of an "unpublished" work which more deeply affects the lives and careers of individuals. And, though the MCAT is unpublished, it clearly is exposed to the public to a limited extent. Equitable considerations may operate to temper the generally powerful effect that the designation "unpublished" normally has on a fair use analysis. In *Salinger,* the Second Circuit was presented with a somewhat analogous situation. There, the famous author's unpublished letters could be reviewed by the public because the persons who received the letters placed them in libraries. The court found a biographer's use of quotations from and paraphrases of the letters *did not* constitute a fair use. In this manner the Second Circuit indicated that the unpublished na-

of ownership with respect to the copyright, or any of the exclusive rights under a copyright, shall be given effect under this title.

While not reaching this issue, the unambiguous language of this provision supports plaintiff's position that a state, as any other individual, may not abrogate a copyright owner's federally protected rights. *See also Music Mills, Inc. v. Arizona,* 591 F.2d at 1286.

**8.** Defendants also contend that the purpose of the State Act does not conflict with the central purpose of the Federal Copyright Act. As explained in *Sony Corp. of America v. Universal City Studios, Inc.,* this purpose is *not* "primarily designed to provide a special private benefit," 464 U.S. 417, 429, 104 S.Ct. 774, 782, 78 L.Ed.2d 574 (1984), but rather, to benefit the *public* by "motivat[ing] the creative activity of the authors and inventors by the provision of a special reward, and to allow the public access to the

products of their genius after the limited period of exclusive control has expired." *Id.* (emphasis added); *see Harper & Row,* 471 U.S. at 545–46, 105 S.Ct. at 2222–23; *see also United States v. Paramount Pictures, Inc.,* 334 U.S. 131, 158, 68 S.Ct. 915, 929, 92 L.Ed. 1260 (1948) ("The sole interest of the United States and the primary object in conferring the [copyright] monopoly lie in the general benefits derived by the public from the labors of authors"). Here, the Federal Copyright Act is being used to keep "creative work" secret. According to the defendants, holders of a copyright may not employ such material in a manner which has a major impact on an individual test taker's future, yet shield that same material from comment and criticism by the very persons whose careers are impacted by the MCAT. However, as stated in *Harper & Row,* one of the necessary effects of federal copyright law is that owners of copyrights will be able to keep their work secret.

ture of a work, even one exposed to the public for limited purposes, is still a factor weighing against fair use. This is so because the copyright owner "has a right to protect the expressive content of his unpublished writings for the term of his copyright." *Id.* at 100.

Defendants appear to argue that the AAMC's administration of the exam constitutes a first publication of the document and that therefore the state, by requiring disclosure subsequent to the administration of the exam, is not interfering with plaintiff's right of first publication. The argument misses the mark to the extent that courts have strongly endorsed the use of federal copyright law as a device to protect the privacy or secrecy of documents. *See Harper & Row*, 471 U.S. at 564, 105 S.Ct. at 2232.

Defendants also assert that the factual nature of the MCAT is a factor operating in favor of disclosure. It is true that "no author may copyright facts or ideas." *Harper & Row*, 471 U.S. at 547, 105 S.Ct. at 2223; *see* 17 U.S.C. § 102. However, "[c]reation of a nonfiction work, even a compilation of pure fact, entails originality" which may be copyrighted. *Id.* As previously noted, the MCAT is a creative compilation which fits well within the subject matter of federal copyright and is of the sort which has been protected from commercial infringement on many occasions. Simply because the MCAT employs facts in its questions does not operate against its status as a work which may be copyrighted.

Cognizant that "unpublished works normally enjoy complete protection" and that "[w]here use is made of materials of an 'unpublished nature,' the second fair use factor has yet to be applied in favor of an infringer," *New Era*, 873 F.2d at 583, this court finds that the second factor cuts in favor of the plaintiff.

*C. Amount and Substantiality of the Portion Used.* The third statutory factor directs the court to "examine the amount and substantiality of the portion used in relation to the copyrighted work as a whole." *Harper & Row*, 471 U.S. at 564,

105 S.Ct. at 2232. Both parties agree that the disclosure provisions of the State Act would cause most of the copyrighted material to be subject to a "use" be it a fair use or not. The defendants admit that this factor leans in favor of the plaintiff, but notes that the state Act only requires disclosure of questions actually used in calculating the raw score of an examinee—permitting the continuation of AAMC's practice of field testing proposed, nongraded, questions without risk of disclosure.

In *Harper & Row*, the Supreme Court held that copying 300 words from a book-length manuscript, though normally an insubstantial portion, was substantial in that particular instance because defendant copied the "heart" of the document. 471 U.S. at 565, 105 S.Ct. at 2233. In *Iowa State University Research Foundation*, the Second Circuit found that an appropriation of only 8% of a film was a significant use with respect to a fair use analysis. 621 F.2d 57, 61 (2nd Cir.1980). However, as noted by the Second Circuit:

> There are no absolute rules as to how much of a copyrighted work may be copied and still be considered a fair use. In some instances, copying a work wholesale has been held to be a fair use, *Sony Corp.; Williams & Wilkins Co. v. United States*, 487 F.2d 1345, 203 Ct.Cl. 74 (1973), *aff'd* (per curiam), 420 U.S. 376, 95 S.Ct. 1344, 43 L.Ed.2d 264 (1975), while in other cases taking only a tiny portion of the original work has been held unfair.

*Maxtone–Graham v. Burtchaell*, 803 F.2d at 1263 (finding that use of 4.3% of published book was "not incompatible with fair use").

This court is compelled to find that the third factor operates strongly in favor of the plaintiff. The disclosure provisions require the AAMC to make available to the general public, as "public documents," all former MCAT test questions. The disclosure provisions are very broad, containing no limitation as to who may view the materials or the period over which exams must be disclosed. This court could envision a more narrowly tailored disclosure, particu-

larly with respect to the advisory committee's review of the potential for bias in standardized testing, that might well be compatible with fair use; however, the scope of the forced disclosure of unpublished, copyrighted material dictated by the State Act, clearly is not.

*D. Effect on the Market.* The last statutory factor focuses on the "effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). "This last factor is undoubtedly the single most important element of fair use" ... and, " 'when properly applied [to a fair use analysis], is limited to copying by others which does not materially impair the marketability of the work which is copied.' " *Harper & Row,* 471 U.S. at 566–67, 105 S.Ct. at 2233–34 (citing 3 *Nimmer on Copyright* § 13.05[A], at 13–76, quoting 1 *Nimmer* § 1.10[D], at 1–87). The framework for analyzing this factor was thoroughly set out in *Sony Corp. v. Universal City Studios, Inc.,* where the Supreme Court stated:

> The purpose of copyright is to create incentives for creative effort. Even copying for noncommercial purposes may impair the copyright holder's ability to obtain the rewards that Congress intended him to have. But a use which has no demonstrable effect upon the potential market for, or value of, the copyrighted work need not be prohibited in order to protect the author's incentive to create. The prohibition of such noncommercial uses would merely inhibit access to ideas without any countervailing benefit.... A challenge to a noncommercial use of a copyrighted work requires proof either that the particular use is harmful, or that if it should become widespread, it would adversely affect the potential market for the copyrighted work. Actual present harm need not be shown.... Nor is it necessary to show with certainty that future harm will result. What is necessary is a showing by a preponderance of the evidence that *some* meaningful likelihood of future harm exists. If the intended use is for commercial gain, that likelihood may be presumed. But if it is

for a noncommercial purpose, the likelihood must be demonstrated.

464 U.S. at 450–51, 104 S.Ct. at 792–93; *see also Harper & Row,* 471 U.S. at 568, 105 S.Ct. at 2234.

The AAMC asserts that both the copyrighted MCATs and MCAT-related studies will be "harmed" if it is required to comply with the State Act's disclosure provisions. This injury is in addition to that which plaintiff claims would inure to its ownership rights under federal copyright law; that is the "exclusive" right to reproduce or copy copyrighted works and to distribute them by sale or transfer, to prepare derivative works, and to display copyrighted works publicly. *See* 17 U.S.C. § 107. In plaintiff's view the marketability of copyrighted MCAT material would be destroyed because the questions and question "stimulus"—the fact pattern on which a question is based—could not be reused on subsequent exams. At oral argument counsel for AAMC stated flatly that no portion of disclosed MCAT questions would be reused since examinees who had read the questions would have an unfair advantage over those who had not.

This assertion is supported with extensive record evidence: Mitchell Aff. at pars. 26–29; Shepard Dep. at 26–27; Stancavage Dep. at 37–39; Wilson–Pessano Dep. at 87–88, 99–100; Plaintiff's Mem., Ex. 4 at 2 and Ex. 5 at 8. As previously noted, the plaintiff believes that the only salient fact necessary for a finding that the fourth factor favors the AAMC is that disclosure of the test questions would prevent their reuse. The Third Circuit has held that public disclosure of standardized tests such as the Scholastic Aptitude Test and Achievement Tests would "render the materials worthless" to the copyright holder. *Katzman,* 793 F.2d at 543. The plaintiff also maintains, and defendants do not dispute, that the development of effective questions costs a good deal of both time and money— an investment which would be lost with disclosure.

Defendants' assertion that the marketability of the copyrighted material would not be affected is, at best, irresolute. Essen-

tially, defendants put forward a theory that if the *plaintiff* took certain steps *some* of the questions, over time, could be reused. After ten years of discovery it behooves the defendants to come forward with more substantial "concrete evidence," *Anderson v. Liberty Lobby*, 477 U.S. at 256, 106 S.Ct. at 2514, as to their position on this material fact than the equivocal opinion of their expert. Without more, this court is well positioned to find on summary judgment that disclosure of the MCAT test questions would prevent them from being reused by the plaintiff. Therefore, the plaintiff has demonstrated "that *some* meaningful likelihood of future harm [to the potential market for the copyrighted work] exists." *Sony Corp. v. Universal City Studios, Inc.*, 464 U.S. at 451, 104 S.Ct. at 793.

Defendants also contend that the State Act does not force the plaintiff to disclose the MCAT materials, but rather presents the AAMC with a choice: avoid disclosure by not administering the exam within New York or administer the MCAT within New York and be subject to the State's disclosure requirements. This argument, while of potential use in situations where the State is seeking to regulate an area left open by the federal government, has no merit when the State law is preempted by the federal law pursuant to the Supremacy Clause. A state may not answer an assertion of federal rights with the reply that one should go elsewhere to exercise those rights. *Cf. Capital Cities Cable v. Crisp*, 467 U.S. at 711, 104 S.Ct. at 2706.

■ To the extent that the defendants assert that AAMC should, with proper effort, be able to create new equally valid test questions at a rate sufficient to replace the disclosed test questions their argument must fail. Congress has found that there is a public interest served by the copyright protections found in § 106. Therefore,

plaintiff generally is not required to change its operations when another individual or entity is interfering with its ownership rights under the Federal Copyright Act in order to make the fair use exception fit. *Association of American Medical Colleges v. Mikaelian*, 571 F.Supp. at 155. This court finds that the fourth fair use factor also operates in favor of the plaintiff. The broad disclosure of the MCAT test questions dictated by the Standardized Testing Act would seriously impair or even destroy the value of the copyrighted exams.

An additional factor supports a finding that the disclosure provisions of the State Act are preempted by federal copyright law. The disclosure provisions, while not necessarily conflicting with federal regulations, are at cross purposes with them. Pursuant to 17 U.S.C. § 408(c) the Register of Copyrights [9] has issued regulations regarding "secure tests"—exams, such as the MCAT, which are non-marketed and "administered under supervision at specified centers on specific dates, all copies of which are accounted for and either destroyed or returned to restricted locked storage following each administration." 37 CFR § 202.20(b)(4). *See Mikaelian*, 571 F.Supp. at 150. To assist in maintaining the secrecy of exam questions the Register of Copyrights has promulgated 37 CFR § 202.20(c)(2)(vi) [10] which obviates the need for the Copyright Office to retain a copy of the secure tests after the administration of the exam. *See Educational Testing Services v. Katzman*, 793 F.2d 533, 538 (3rd Cir.1986). The Seventh Circuit has found this regulation to be in accordance with the Copyright Act's intention to "afford protection to confidential creative material such as secure tests," *National Conference of Bar Examiners v. Multistate Legal Studies*, 692 F.2d 478, 484 n. 6 (7th Cir.1982),

---

9. The Register of Copyrights is vested by Congress with the authority to administer federal copyright law. *Goldstein v. California*, 412 U.S. 546, 568–69, 93 S.Ct. 2303, 2315–16, 37 L.Ed.2d 163 (1973).

10. 37 CFR § 202.20(c)(2)(vi) states:
*Tests.* In the case of tests, and answer material for tests, published separately from other liter-

ary works, the deposit of one complete copy will suffice in lieu of two copies. In the cases of any *secure test the Copyright Office will return the deposit (i.e. the test itself) to the applicant promptly after examination:* Provided that sufficient portions, description, or the like are retained so as to constitute a sufficient archival record of the deposit. (Emphasis added).

*cert. denied,* 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983), and thus validly promulgated under the Copyright Act. The existence of these regulations reveal that it is the considered opinion of the Register of Copyright that the Copyright Act of 1976 operates to protect secure tests from public disclosure and serves as further support for a finding that the State Act is preempted.

This court finds that three of the four fair use factors, as well as other equitable considerations, operate in favor of the plaintiff. The disclosure provisions of the Standardized Testing Act, therefore, do not constitute a fair use within the meaning of 17 U.S.C. § 107. Defendants' affirmative defense fails.

*The Archive Exception 17 U.S.C. § 108*

■ Having found that federal copyright law operates to prohibit the State of New York from forcing the AAMC to disclose the copyrighted MCAT and MCAT materials, this court need spend little time on the defendants' "archive" defense. As already noted, the New York State Legislature amended the Standardized Testing Act so that the State Education Department would be "considered an archive" with respect to the retention and copying of standardized tests. N.Y.Educ.Law § 342(7). The goal of this amendment was to "harmonize" the State Act with federal copyright law in a manner which would fit within the "archive" exception codified at 17 U.S.C. § 108. The archive clause operates as an exception to the exclusivity of ownership rights bestowed upon a copyright owner by permitting, under limited circumstances, the reproduction and distribution of copyrighted works by "archives" without threat of civil suit. Though there is no case law remotely on point, it is clear that this exception would only apply to unpublished works which are properly in the possession of an archive in the first place. *See* January 1988 Report of the Register of Copyrights on Library Reproduction of Copyrighted Works (17 U.S.C. § 108) ("Congress did not intend subsections 108(d) and (e) to apply to the photocopying and distribution of unpublished works by libraries or archives for their patrons.... Once the copyright owner has made the choice not to publish, this choice must be honored."). Here, the State Act, if enforced, would cause the copyrighted materials to be placed with the designated archive against the will of the owner. If the archive could copy and distribute this material it could also copy and distribute any author's creative work, though unpublished, so long as the materials came into the archive's possession. This would be so even if the possession was by illegitimate means. Such a result would be totally at odds with the intent of Congress when enacting the Federal Copyright Act. On this basis the defendants' assertion that the State Act is somehow saved by operation of § 108 is rejected.

*Conclusion*

This court finds that the "disclosure provisions" of New York State's Standardized Testing Act, N.Y.Educ.Law §§ 341, 341–a and 342 are preempted due to a direct conflict with Federal Copyright Law. Therefore, this court shall issue a permanent injunction barring the defendants from enforcing the disclosure provisions of the Standardized Testing Act, N.Y. Educ.Law §§ 341, 341–a, and 342, as against plaintiff, the Association of American Medical Colleges. Plaintiff is directed to submit a proposed order to the court and to counsel for the defendants for review and comment. The court has considered plaintiff's request for attorneys fees and costs, and denies the same.

IT IS SO ORDERED.