**D.C. COMICS, INC., Plaintiff,**

v.

**REEL FANTASY, INC., trading as Batcave and Frank C. Verzyl, Defendants.**

**No. 81 Civ. 2197 (KTD).**

United States District Court,
S. D. New York.

March 22, 1982.

mark infringement, unfair competition and trademark dilution rest solely upon defendants use of "Batcave" to designate their retail bookstore and mail order service. The defendants, Reel Fantasy, Inc., a New York corporation, and its president, Frank C. Verzyl, own and operate a chain of retail bookstores in the metropolitan area, and a related mail order business. Since 1977, both of defendants' enterprises have operated under the service mark Batcave Bookstores. Defendants' main office is located at 120 West 3rd Street, New York, New York, where a Batcave bookstore is maintained. In its complaint, plaintiff seeks a permanent injunction barring defendants' further use of "Batcave" as a service mark, defendants' abandonment of its service mark application and damages.

Weiss, Dawid, Fross, Zelnick & Lehrman, New York City, for plaintiff; Robert B. G. Horowitz, New York City, of counsel.

Frank Verzyl, pro se defendant.

## OPINION

KEVIN THOMAS DUFFY, District Judge:

Defendants have moved for summary judgment in this action charging them with common law and statutory trademark infringements, common law and statutory unfair competition, trademark dilution, and copyright infringements. Jurisdiction is based upon 28 U.S.C. 1338(a) and (b), 15 U.S.C. 1121 and the doctrine of pendent jurisdiction.

## BACKGROUND

Plaintiff, D. C. Comics, Inc. ("D. C."), publishes and is the successor in interest to copyrights on adventure stories depicting numerous comic strip characters including Batman and Green Arrow. In these adventures, Batman's secret hideout is named the "Batcave."[1]  Plaintiff's claims of trade-

## DISCUSSION

The law of trademark infringement is "but a part of the law of unfair competition," and thus I will apply the "same test ... in determining each claim." *American Footware Corp. v. General Footware Co.*, 609 F.2d 655 (2d Cir. 1979), *cert. denied*, 445 U.S. 951, 100 S.Ct. 1601, 63 L.Ed.2d 787 (1980). The crucial issue in actions of this kind is "whether there is any likelihood that an appreciable number of ordinarily prudent purchasers are likely to be misled, or indeed simply confused as to the source of the goods in question." *Vitarroz Corp. v. Borden, Inc.*, 644 F.2d 960, 966 (2d Cir. 1981); *Mushroom Makers, Inc. v. R. G. Barry Corp.*, 580 F.2d 44, 47 (2d Cir. 1978), *cert. denied*, 439 U.S. 1116, 99 S.Ct. 1022, 59 L.Ed.2d 75 (1979).

In the instant situation, where plaintiff is attempting to block defendants' use of the Batcave mark for its comic book store, likelihood of confusion is determined as a function of several variables, including the strength of plaintiff's own mark, the degree of similarity between the two marks and the two designated objects, actual confusion, defendants' good faith, the sophistica-

---

1. D. C. also uses the mark "Batcave" for a "Batman" dollhouse which it licenses and as a column heading in magazines featuring Batman.

tion of the buyers, and the likelihood that D. C. Comics will "bridge the gap" and enter into the retail bookselling and mail order service business. *McGregor-Doniger, Inc. v. Drizzle, Inc.*, 599 F.2d 1126, 1130 (2d Cir. 1979); *Polaroid v. Polarad Electronics Corp.*, 287 F.2d 492, 495 (2d Cir.), *cert. denied*, 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).

In addition, since opposed interests are "weighed in scales of conscience and fair dealing," *Polaroid v. Polarad Electronics Corp., supra*, 287 F.2d at 497–98, another factor in determining whose interests will prevail is "the relative harm which the parties would experience as a result of grant or denial of an injunction." *Procter & Gamble Co. v. Johnson & Johnson, Inc.*, 485 F.Supp. 1185, 1195 (S.D.N.Y.1979), *aff'd*, 636 F.2d 1203 (2d Cir. 1980).

## I. *Trademark Infringement*

Plaintiff claims that defendants' use of "Batcave" infringes upon two trademark interests: its registered "Batman" trademark and its alleged common law trademark in "Batcave."

■ There is no doubt that "Batman" is a validly registered "arbitrary or fanciful mark" and thus entitled to protection. *McGregor-Doniger, Inc. v. Drizzle, Inc., supra*, 599 F.2d at 1132. However, "Batcave" bears no similarity to "Batman" other than a common use of the "Bat" prefix as a descriptive term. Plaintiff does not allege, and this court does not find that the word "Bat" has acquired a secondary meaning which would automatically link any word it modified with the Batman character. Indeed, commonly used words such as "bat-boy" have no connection to the Batman character.[2] There is also a wide gap between plaintiff's use of "Batman" as the name of a masked fictional character and defendants' use of "Batcave" as the name of a store. Plaintiff's right to trademark protection in "Batman" cannot be found to extend so far as to prevent defendants from using a dissimilar mark for a dissimilar purpose.

■ Plaintiff also claims an allegedly valid common law trademark in "Batcave" as a symbol of Batman's hideout. "Batcave" as used by the plaintiff is at most a suggestive mark. However, although the name suggests the use of the cave as Batman's hideout, its name originated as a description of a cave inhabited by bats. Exhibit 2, plaintiff's supporting affidavits. Thus plaintiff must show that the "Batcave" has established a secondary meaning before it can claim ownership of the mark. *McGregor-Doniger, Inc. v. Drizzle, Inc., supra*. Secondary meaning establishes that the "primary significance of the mark in the minds of the consumers is the identification of the producer, not a description of the product." *American Footware Corp. v. General Footware Co., supra*, 609 F.2d at 663. Mere findings of a marks' distinctiveness is insufficient to support a finding of secondary meaning if the mark does not identify plaintiff as the source of the goods or service. *Id.* Plaintiff has presented no evidence that the mark "Batcave" is immediately associable with the producer of Batman.

Even assuming that secondary meaning and a valid common law trademark were established, plaintiff has failed to show that defendants' use of "Batcave" has in fact infringed upon that mark. Defendants' use of the mark in its retail book business bears little if any resemblance to plaintiff's use of the "Batcave" mark as either Batman's hideout or as the name of a column in its comic magazines, or as a dollhouse.

Furthermore, plaintiff has not alleged any instances of actual confusion as to "the source of the goods." An affidavit was presented as evidence that a consumer associated the store, which indeed does sell comic books, with Batman. However, "one can capitalize upon a market or fad created by

---

2. In fact, plaintiff has deemed it necessary to register a series of trademarks in "Bat"-marks such as Bat Code, Bat Bomb, Bat Lash, Bat Girl, Batcar, and Batcycle for use in toys. It has also applied for registration in "Batcave" for use as a toy, but registration was never secured.

another provided that it is not accomplished by confusing the public into mistakenly purchasing the product in the belief that the product is the product of the competitor." *American Footware Corp. v. General Footware, supra,* 609 F.2d at 662. This case deviates from the usual trademark cases involving dissimilar uses in that defendants are using the mark to designate a store, not a product. Defendant is not a competitor of plaintiff but a retailer of plaintiff's products. The issue here is not whether purchasers will buy products correctly believing them to be plaintiff's but whether purchasers will buy the D. C. products believing that plaintiff sponsors defendants' store. There is no evidence substantiating D. C.'s allegation that a consumer was likely to believe that the store was in fact an official "Batman" store. Indeed, defendants state, and plaintiff does not deny, that defendants do not specialize in "Batman" paraphernalia; that D. C. Comics is only one of a number of publishers whose magazines and comics defendants sell, and that defendants also sell movie memorabilia and collectibles which have no link at all to Batman.[3]

A potential purchaser is not vulnerable to deception in this case. It appears that the ordinary customers who are interested in the specialty items the defendants sell will recognize that the Batcave Bookstore stocks comic magazines of various publishers and thus realize that no one publisher sponsors defendants' store. Those attracted to the store under the mistaken belief that defendants sell Batman paraphernalia would be immediately disappointed upon entering the store.

Defendants have made no representations that they were sponsored by the plaintiff. It is possible that defendants did not intend to capitalize upon the "Batman" fame at all. Rather, the defendants claim that they picked "Batcave" to capitalize upon the subterranean location of their store and upon its resemblance, with its long corridor leading to a room with a rough unfinished ceil-

ing, to a cave inhabited by bats. These facts establish a good faith basis for their use of the mark "Batcave."

Further, plaintiff has not demonstrated a need for protection of its "Batcave" interest. No proof suggests that D. C. intends to enter a related field at a future time. Sol Harrison, consultant and president of D. C. Comics, Inc. until February, 1982, has denied that plaintiff has any plans to enter the comic book store business or to use the name "Batcave" in such a business. A property interest in a trademark only exists as a right appurtenant to an established business or trade in connection with which the mark is employed. *American Footware Corp. v. General Footware Co., supra.*

In sum, plaintiff has failed to establish a secondary meaning in "Batcave" which would lead to the likelihood that defendants' use of the mark would cause confusion. Thus, plaintiff's trademark infringement claims are dismissed.

II. *Unfair Competition*

■ Plaintiff's claim of statutory unfair competition is premised upon Section 43(a) of the Lanham Act, 15 U.S.C. § 1125, which prohibits false descriptions of goods and false designations as to their source. As was discussed above, plaintiff has not established that defendants have confused the public as to the source of the D. C. Comics or the store's services. Thus, this claim must also fail.

Similarly plaintiff's claim of common law unfair competition must fail. As there is no evidence of confusion or likelihood of confusion, there is no possibility that defendants have enjoyed a "free ride" at plaintiff's expense. *Procter & Gamble Co. v. Johnson & Johnson, supra,* 485 F.Supp. at 1209.

■ Finally, as confusion lies at the heart of a claim arising under the anti-dilution statute, N.Y.Gen.Bus.Law § 368–b and plaintiff has failed to establish such confusion, this claim is also dismissed. *Mush-*

---

3. The incidental use of an illustration of Batman along with other comic strip characters on some advertisement flyers do not strengthen the link between the store and the producers of

"Batman." In fact, plaintiff's allegation that an illustration of Green Arrow, a character with little relation to Batman or Batcave, was used with that of Batman weakens the link.

room *Makers, Inc. v. R. G. Barry Corp., supra*, 580 F.2d at 49.

■ Related to any discussion of trademark infringement and unfair competition is consideration of the equities involved. Where noncompetitive goods are involved, the Lanham Act protects against the senior user's loss of reputation, loss of patronage and limitation of business expansion. *Vitarroz Corp. v. Borden, Inc., supra*, 644 F.2d at 967. "Because consumer confusion as to source [of services] is unlikely," D. C.'s reputation "cannot be expected to be harmed" *McGregor-Doniger, Inc. v. Drizzle, Inc., supra*, 599 F.2d at 1139. Increased patronage of defendants' store will most likely enhance plaintiff's business as defendants sell D. C.'s products. Finally, as was previously discussed, plaintiff has no intention of expanding its business to encompass a retail bookstore and mail order service business and is not being limited by the defendants in that respect.

Plaintiff's business will suffer little harm from defendants' continued use of "Batcave." On the other hand, defendants have spent five years building a small business around the mark "Batcave." Defendant will suffer a relatively greater disadvantage by changing to another name. Thus, "the scales of conscience and fair dealing" tip in favor of the defendants.

Summary judgment is thus granted as to the counts in plaintiff's complaint alleging unfair competition.

### III. *Copyright Infringement*

The remaining two counts charge that the defendants infringed upon plaintiff's copyrights in the comic characters Batman and Green Arrow by depicting their likeness on the border of at most a few flyers advertising their store. Although a factual dispute exists as to whether defendants have permission to use these illustrations, this dispute is not germane to the instant issue. It is not contested that no more recently than 1979, defendants used the illustrations on at most a few of defendants' advertisement flyers.

■ There is a "privilege in others than the owner of a copyright to use the copyrighted material in a reasonable manner without his consent, notwithstanding the monopoly granted to the owner." *Ball, Copyright and Literary Property* 260 (1944); *Rosemont Enterprises, Inc. v. Random House, Inc.*, 366 F.2d 303 (2d Cir. 1966), *cert. denied*, 385 U.S. 1009, 87 S.Ct. 714, 17 L.Ed.2d 546 (1967). This privilege constitutes what is known as "fair use."

■ The resolution of a fair use claim "depends on an examination of the facts in each case [and] cannot be determined by resort to any arbitrary rules or fixed criteria. *Iowa State University v. American Broadcasting*, 621 F.2d 57 (2d Cir. 1980); *Meeropol v. Nizer*, 560 F.2d 1061, 1068 (2d Cir. 1977), *cert. denied*, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 756 (1978). Ordinarily the validity of a fair use defense is a factual question for the jury to determine. *Roy Export Co. v. CBS*, 503 F.Supp. 1137, 1143 (S.D.N.Y.1980), *aff'd*, 672 F.2d 1095 (1982). However, where no material issues of fact are in dispute, as is true in the present case, it is properly decided through a summary judgment motion. *Elsmere Music, Inc. v. National Broadcasting Co.*, 482 F.Supp. 741, 744 (S.D.N.Y.), *aff'd*, 623 F.2d 252 (2d Cir. 1980).

■ The four factors to be weighed in determining whether a use constitutes a fair use are (i) the purpose or character of the defendants' use, (ii) the nature of the copyrighted work, (iii) the amount and substantiality of the material used in relation to the copyrighted work as a whole, and (iv) the effect of the use upon the owner's potential market for a value of his work. *Williams and Wilkins Company v. United States*, 487 F.2d 1345, 1352, 203 Ct.Cl. 74 (1973), *aff'd*, per curiam, 420 U.S. 376, 95 S.Ct. 1344, 43 L.Ed.2d 264 (1975); *Roy Export Co. v. CBS, supra*.

■ In reviewing the uncontested facts, I find that defendants' incidental use of illustrations of Batman and Green Arrow constitutes "fair use."

Defendants are retailers of comic books. Their purpose in depicting the figures of Batman and Green Arrow on advertisement flyers was to advertise the fact that they sold comic books. This was a reasonable

purpose in light of the fact that Batman and Green Arrow are comic book characters and appear in many comic book adventure stories. Defendants did not intend to appropriate the figures as their own, as is evidenced by the undisputed fact that a copyright notice identifying plaintiff as the source of the figures is included with the figures.

Further, defendants' use of the characters are incidental. The characters are included only as border figures. Neither of the characters are ever depicted as actually endorsing or sponsoring the store and no actual frames from any of the plaintiff's comics are used. Defendant depicted only the actual characters themselves in stationary poses.

Finally, it does not appear that plaintiff was harmed by defendants' use of the figures. On the contrary, defendants' use of the figures advertised their sale of plaintiff's comic books, leading to an increased market for plaintiff's goods.

Plaintiff's two counts of copyright infringement are thus dismissed.

In sum, summary judgment is entered in favor of the defendants.