**DC COMICS INC., Plaintiff-Appellant,**

v.

**REEL FANTASY, INC., trading as Batcave and Frank C. Verzyl, Defendants-Appellees.**

No. 98, Docket 82–7310.

United States Court of Appeals, Second Circuit.

Argued Oct. 18, 1982.

Decided Dec. 14, 1982.

Richard Lehv, New York City (Weiss, Dawid, Fross, Zelnick & Lehrman, P.C., New York City, of counsel), for plaintiff-appellant.

Frank C. Verzyl, pro se.

Before OAKES and WINTER, Circuit Judges, and MacMAHON,* District Judge.

WINTER, Circuit Judge:

DC Comics Inc. ("DC") appeals from a judgment of the United States District Court, 539 F.Supp. 141, for the Southern District of New York, entered by Judge Duffy, granting summary judgment in favor of defendants Reel Fantasy Inc., trading as Batcave, and its president, Frank C. Verzyl (collectively "RFI")[1], and dismissing DC's complaint alleging unfair competition and trademark and copyright infringement. Because summary judgment was clearly inappropriate, we reverse.

I

For purposes of this appeal, we may assume the following facts. DC is the sole owner of all trademarks and copyrights relating to numerous comic strip characters who appear in cartoon adventure stories in which the principal heroes are Batman and Green Arrow. In those adventures, Batman's secret hideout and headquarters is called the Batcave, and has been a prominent feature since 1944. "The Batcave" is also the title of a column which appeared in DC's Batman comic magazines since 1959. For over twenty-one years, DC has derived substantial revenues from licensing the use of the Batman character and related Bat-paraphernalia, including licensing of the "Batcave" mark to a toy manufacturer which markets a plastic replica of Batman's hideout.

Defendant RFI is a New York corporation which owns a chain of retail bookstores in the New York metropolitan area and a related mail order business, all of which operate under the name of "The Batcave." The Batcave bookstores sell books, comic magazines, including Batman and Green Arrow comic books, and movie memorabilia. Inside RFI's Manhattan store is at least one depiction of the stylized bat symbol worn by DC's Batman character. On at least two occasions, RFI has also used drawings of DC's Batman and Green Arrow characters in its advertising flyers.

DC commenced this action in April, 1982, seeking damages and injunctive relief against RFI and its president Frank Verzyl. DC alleged that RFI's use of the Batman and Green Arrow figures in its advertising flyers, its display of the Batman insignia in its store and its use of the name "The Batcave" for its bookstore and mail order business constituted: (i) copyright infringement under the Copyright Act of 1976, 17 U.S.C. §§ 101–810 (1976); (ii) trademark

---

* The Honorable Lloyd F. MacMahon, United States District Judge for the Southern District of New York, sitting by designation.

1. Frank Verzyl appears *pro se* and RFI is not represented by counsel. We assume, for the purposes of this appeal, that the corporation has joined in and adopted all of Verzyl's *pro se* papers. Fed.R.App.P. 28(i).

infringement under Section 32(1) of the Lanham Trademark Act of 1946, 15 U.S.C. § 1114(1) (1976) and the common law; (iii) unfair competition under Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a) (1976) and the common law; and (iv) trademark dilution and injury to business reputation under New York law, N.Y.Gen.Bus.Law § 368–d (McKinney 1968).

Defendant Frank Verzyl, appearing *pro se,* filed a motion to dismiss. Although RFI submitted only an unsworn statement, no pre-trial discovery was conducted, and DC offered substantial evidentiary submission in opposition, Judge Duffy, without oral argument or evidentiary hearing, granted summary judgment for RFI and dismissed the complaint. In so doing, he found that DC had "failed to establish" a likelihood of confusion resulting from RFI's use of the "Batcave" mark and that RFI's use of the Batman and Green Arrow characters on its advertising came within the "fair use" defense to copyright infringement liability.

We reverse.

## II

It is apparent from the face of his opinion that Judge Duffy believed DC bore a burden of proving its case on RFI's motion and resolved a host of material factual disputes against DC in granting summary judgment. He stated, for example, that DC "failed to show that defendants' use of 'Batcave' has in fact infringed upon that mark," *DC Comics Inc. v. Reel Fantasy, Inc.,* 539 F.Supp. 141, 144 (S.D.N.Y. Mar. 22, 1982); that DC had "failed to establish a secondary meaning in 'Batcave'," *id.* at 145; that DC had "not established that defendants have confused the public as to the source of the D.C. comics or the store's services," *id.* at 145; that RFI's unsworn assertion was sufficient to "establish a good faith basis for their use of the mark 'Batcave'," *id.* at 145; and that RFI's "incidental use of illustrations of Batman and Green Arrow constitutes 'fair use'," *id.* at 146. His decision is troubling not only because it disregards well-known principles of summary judgment, but also because it conspicuously ignores our recent

decision in *American International Group, Inc. v. London American International Corp. Ltd.,* 664 F.2d 348, 351 (2d Cir.1981), a case strikingly similar to the present one in several respects.

■ DC alleged that RFI's use of the name "The Batcave" for its stores infringed on its registered trademark for "Batman" and a common law trademark in "Batcave." The district court granted summary judgment because it found that no confusion was likely to result from RFI's use of the name the "Batcave" for its stores. As we noted in *American International Group,* however, "[w]hether or not there is a likelihood of confusion is a question of fact as to the probable or actual actions and reactions of prospective purchasers of the goods or services of the parties." 664 F.2d at 351. This determination in turn depends upon a number of factual variables such as "(1) the strength of the plaintiff's mark, (2) the degree of similarity between the two marks, (3) the proximity of the products or services, ... (4) the defendant['s] good faith in adopting its mark," *id.,* as well as the existence of actual confusion and the sophistication of the consumers of the products or services. *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir.), *cert. denied,* 368 U.S. 820, 82 S.Ct. 36, 7 L.Ed.2d 25 (1961).

As to the strength of DC's mark, the district court concluded that "Batman" did not extend to "Batcave" because the only similarity between the two words was the "Bat" prefix common to both words, and "Bat" had not "acquired a secondary meaning which would automatically link any word it modified with the Batman character." *DC Comics, Inc.* at 144. In so concluding, the court simply ignored DC's allegations and evidentiary submission which more than adequately raised the possibility that the Batcave is an integral part of the Batman stories and thus strongly associated with the mark "Batman."

■ The district court's conclusion that the "Batman" and "Batcave" marks were dissimilar also ignored the evidentiary ma-

terials submitted by DC which suggested an almost unmistakable association between "Batman" and the "Batcave." In considering the proximity of the products or services, the district court overlooked the obvious link between the Batman character, predominantly a comic book personality, and RFI's Batcave sale of comic books. Because an issue of material fact exists concerning the connection between "Batman" and the "Batcave," there are live factual questions as to the proximity of the comic book figure and the comic book store, particularly since customers might well believe that the Batcave bookstores are operated by those who create or publish Batman comic books. *E.g., Spring Mills Inc. v. Ultracashmere House, Ltd.,* 689 F.2d 1127, 1133–34 (2d Cir.1982).

The district court simply adopted the unsworn statements of RFI in concluding that it used the "Batcave" mark in good faith:

> [T]he defendants claim that they picked 'Batcave' to capitalize upon the subterranean location of their store and upon its resemblance, with its long corridor [sic] leading to a room with a rough unfinished ceiling, to a cave inhabited by bats. These facts establish a good faith basis for their use of the mark 'Batcave.'

*Id.* at 145. In so concluding, the district judge resolved yet another factual issue which we have said is "singularly inappropriate for determination on summary judgment." *American International Group,* 664 F.2d at 353. This finding is especially disturbing since DC was prevented from engaging in discovery and RFI's unsworn affirmations prove nothing.

The district judge also found there was "no evidence substantiating DC's allegation that consumers were likely to believe that the store was in fact an official 'Batman' store," although he acknowledged that "[a]n affidavit was presented as evidence that a consumer associated the store, which indeed does sell comic books, with Batman." *DC Comics Inc.* at 144. He reached this conclusion by reasoning that customers entering a Batcave bookstore would quickly perceive that it sold many different comic

books. At the risk of understatement, we will say only that the logic of how such sales would inexorably dispel any thought of a connection between the store and the publishers of Batman was far more obvious to him than it is to us. And, at the risk of repetition, we state that such factual conclusions are inappropriate on a motion for summary judgment.

■ Finally, the district court held that RFI's use of DC's Batman and Green Arrow figures on its advertising flyers came within the fair use defense. The doctrine of fair use, originally a creature of the common law and now codified in 17 U.S.C. § 107(2) (1976), permits the reasonable use of copyrighted material without the owner's consent when such use would tip the balance between the public interest in the free flow of information and the copyright holder's exclusive control over the work in favor of the public. *Meeropol v. Nizer,* 560 F.2d 1061, 1068 (2d Cir.1977), *cert. denied,* 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 756 (1978). 17 U.S.C. § 107 provides in pertinent part:

> [T]he fair use of a copyrighted work, including such use by reproduction in copies or phonorecords or by any other means specified by that section, for purposes such as criticism, comment, news reporting, teaching (including multiple copies for classroom use), scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—
>
> (1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;
>
> (2) the nature of the copyrighted work;
>
> (3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and
>
> (4) the effect of the use upon the potential market for or value of the copyrighted work.

While it appears that DC's copyrights may have been secured before the statute

took effect, thus rendering it technically inapplicable, *e.g., Iowa State University v. American Broadcasting Company,* 621 F.2d 57, 60 n. 5 (2d Cir.1980), Section 107 merely codified the fair use doctrine without change, limitation or expansion, *Meeropol v. Nizer,* 560 F.2d at 1068, and therefore offers guidance in applying the doctrine. 3 M. Nimmer, *Nimmer On Copyright* § 13.05 (1982).

The fair use defense turns not on hard and fast rules but rather on "an examination of the facts in each case." *Meeropol v. Nizer,* 560 F.2d at 1068. The four factors listed in Section 107 raise essentially factual issues and, as the district court correctly noted, are normally questions for the jury.

Since the flyers utilizing the copyrighted figures were obviously of a commercial nature and part of an alleged overall appropriation of DC's property in the Batman character, we cannot say as a matter of law that a fair use defense will succeed. Moreover, we do not agree with the district court's statement relating to the fourth fair use criterion:

> [i]t does not appear that plaintiff was harmed by defendants' use of the figures. On the contrary, defendants' use of the figures advertised their sale of plaintiff's comic books, leading to an increased market for plaintiff's goods.

*DC Comics Inc.* at 147. Since one of the benefits of ownership of copyrighted material is the right to license its use for a fee, even a speculated increase in DC's comic book sales as a consequence of RFI's infringement would not call the fair use defense into play as a matter of law. The owner of the copyright is in the best position to balance the prospect of increased sales against revenue from a license.

Reversed and remanded.