**ASSOCIATION OF AMERICAN MEDI-CAL COLLEGES, Plaintiff–Appellee, Cross–Appellant,**

**v.**

**Mario CUOMO, Ind., and as Governor of the State of New York; Theodore M. Black, Ind., and as Chancellor, Board of Regents of the University of the State of New York; Willard A. Genrich, Ind., and as Vice Chancellor, Board of Regents of the University of the State of New York; Kenneth B. Clark, Harold E. Newcomb, Emlyn I. Griffith, Mary Alice Kendall, Jorge L. Batista, Louis E. Yavner, Laura Bradley Chodos, Martin C. Barell, Joseph R. Bongiorno, Louise P. Matteoni, J. Edward Meyer, Arlene B. Reed–Delaney, R. Carlos Carballada, Ind., and as Members of the Board of Regents of the University**

of the State of New York, Gordon M. Ambach, Ind., and as Commissioner of Education, the University of the State of New York, and Robert Abrams, Ind., and as Attorney General, Defendants–Appellants, Cross–Appellees.

Nos. 595, 690, Dockets 90–7269, 90–7309.

United States Court of Appeals, Second Circuit.

Argued Nov. 26, 1990.
Decided March 12, 1991.

**520**

Robert A. Burgoyne, Washington, D.C. (Carl W. Vogt, Fulbright & Jaworski, Washington, D.C.; Joseph A. Keyes, Jr., Ass'n of American Medical Colleges, Washington, D.C.; Carroll J. Mealey, Christopher Massaroni, DeGraff, Foy, Conway, Holt–Harris & Mealey, Albany, N.Y., of counsel), for plaintiff-appellee, cross-appellant.

Daniel Smirlock, Asst. Atty. Gen., Albany, N.Y. (Robert Abrams, Atty. Gen. of the State of New York, O. Peter Sherwood, Sol. Gen., Peter H. Schiff, Deputy Sol. Gen., Albany, N.Y., of counsel), for defendants-appellants, cross-appellees.

Bruce P. Keller, New York City (Lorin L. Reisner, Debevoise & Plimpton, New York City, Alan B. Morrison, David C. Vladeck, Public Citizen Litigation Group, Washington, D.C., of counsel), for amici curiae National Center for Fair & Open Testing, Public Citizen Litigation Group, Center for Women Policy Studies, Arthur O. Eve, Fund for the Feminist Majority, Golden Rule Ins. Co., Mexican American Legal Defense and Educ. Fund, National Educ. Ass'n, National Women's Law Center, New York Public Interest Research Group, and NOW Legal Defense and Educ. Fund.

David M. White, Berkeley, Cal., for amici curiae Testing for the Public, Puerto Rican Legal Defense and Educ. Fund, U.S. Students Ass'n, and Equality in Testing Project.

Edward W. Keane, New York City (Henry Christensen III, David G. Feher, Sullivan & Cromwell, New York City, of counsel), for amicus curiae College Entrance Examination Bd.

Before ALTIMARI and MAHONEY, Circuit Judges, and DALY, District Judge.*

ALTIMARI, Circuit Judge:

The central question presented by this appeal is whether the district court erred in holding that the disclosure requirements of New York's Standardized Testing Act, N.Y.Educ.L. § 340 et seq. (McKinney 1988) ("STA"), are pre-empted by the federal Copyright Act of 1976, 17 U.S.C. § 101 et seq. (1988) ("Copyright Act"). Defendants-appellants, cross-appellees Mario Cuomo et al. (the "State") appeal from a judgment, entered in the United States District Court for the Northern District of New York (Neil P. McCurn, *Chief Judge*), granting plaintiff-appellee, cross-appellant American Association of Medical Colleges' ("AAMC") motion for summary judgment and enjoin-

---

* The Honorable T.F. Gilroy Daly, District Judge of the United States District Court for the District of Connecticut, sitting by designation.

ing the State from enforcing various provisions of the STA against AAMC. *Association of American Medical Colleges v. Carey*, 728 F.Supp. 873 (N.D.N.Y.1990) ("*AAMC II* ").

In 1979, AAMC initiated this action for declaratory and injunctive relief, alleging that the STA operates to infringe its federal copyright in the test forms, questions, answers, and reports prepared in connection with the administration of the Medical College Admission Test ("MCAT"). It further alleged that, as a result of the conflict between the STA and the Copyright Act, the former was preempted pursuant to the Constitution's Supremacy Clause, U.S. Const., art. VI, cl. 2. The State responded that the STA's treatment of the MCAT constitutes a "fair use" under the Copyright Act, 17 U.S.C. § 107 (1988), and, therefore, that the STA was not preempted.

On October 25, 1988, after nearly ten years of litigation, AAMC moved for summary judgment on its complaint. The State opposed this motion and cross-moved for dismissal of AAMC's pendent claims based on the New York State Constitution. On January 12, 1990, the district court granted AAMC's motion for summary judgment and enjoined enforcement of certain STA provisions which it found to conflict with the Copyright Act. The court also granted the State's motion to dismiss AAMC's pendent state constitutional claims and denied AAMC's request for attorney's fees.

On appeal, the State contends that the district court erred in granting summary judgment in favor of AAMC. It argues that genuine issues of material fact exist, particularly with regard to the effect of the STA's disclosure provisions on the copyrighted material's market value. The State also contends that the scope of the court's injunction is overly broad, even if the Copyright Act is deemed to preempt some STA provisions. AAMC, in its cross-appeal, argues that the court improperly denied its request for attorney's fees under section 505 of the Copyright Act. For the reasons set forth below, we reverse the judgment of the district court, vacate the permanent injunction, and remand for further proceedings.

### BACKGROUND

AAMC is a non-profit educational association comprised of medical schools, teaching hospitals, and academic societies. It sponsors a testing program for medical school applicants which is designed to provide medical school admissions committees with a uniform standard for measuring aptitude. The central feature of this program is the MCAT, a test developed at AAMC's request by the American Institutes for Research in the Behavioral Sciences ("AIR"). The exam consists of some 300 questions and is designed to measure a test-taker's knowledge of chemistry, biology, and physics, as well as his or her reading and quantitative skills. Virtually every medical school in the United States requires applicants to take the MCAT.

The AAMC holds copyrights in MCAT test forms, test questions, answer sheets, and reports. It has never made the MCAT or test answers available to the general public. AAMC does, however, make one "practice test"—a previously-used test that was compromised through unauthorized disclosure—available to interested applicants. After the exams are graded, AAMC sends examinees only their MCAT scores and does not permit them access to test questions or answer keys.

In 1979, the State of New York enacted the STA in order to open the standardized testing process to public scrutiny. In its present form, the STA provides that "[w]henever any test agency prepares or causes to have prepared research which is used in any study, evaluation or statistical report pertaining to a test ..., such study, evaluation or report shall be filed with" the Commissioner of Education. N.Y.Educ.L. § 341. Test agencies also must prepare and file reports analyzing test scores according to race, ethnicity, gender and linguistic background for tests given between July 1, 1988 and July 1, 1989. N.Y.Educ.L. § 341-a. In addition, "[w]ithin thirty days after the results of any standardized test are released," a test agency must file "a

copy of all test questions used in calculating the test subject's raw score" and "the corresponding acceptable answers to those questions" with the Commissioner of Education. N.Y.Educ.L. § 342(1). These reports, test questions, and test answers are designated "public records," N.Y.Educ.L. §§ 341, 342(7), subjecting them to public inspection upon request under the New York Freedom of Information Law, N.Y. Pub.Off.L. § 84 *et seq.* (McKinney 1988). Finally, the STA requires that, after the test has been filed with the Commissioner, the test agency must "provide to the test subject the opportunity to secure" test questions and answers, and "may charge a nominal fee for providing such information." N.Y.Educ.L. § 342(2).

Following enactment of the STA, AAMC commenced an action for declaratory and injunctive relief, alleging that the STA facilitates infringement of its copyrights in MCAT forms, questions, answers, and reports. AAMC contended that, as a result, the STA is preempted by the federal Copyright Act, 17 U.S.C. § 101 *et seq.* In January 1980, finding AAMC to have satisfied the prerequisites to obtain preliminary injunctive relief, the district court granted AAMC's motion for a preliminary injunction against enforcement of sections 341 and 342 of the STA. *Association of American Medical Colleges v. Carey,* 482 F.Supp. 1358 (N.D.N.Y.1980) ("*AAMC I*"). Following a lengthy period of discovery, AAMC amended its complaint to allege, *inter alia,* that sections 341, 341–a, and 342 of the STA are preempted by the federal Copyright Act. In addition, AAMC alleged that the STA's provisions infringed its copyright, in violation of 17 U.S.C. § 501(a) (1988), and constituted a seizure of its exclusive rights, in violation of 17 U.S.C. § 201(e) (1988). AAMC also alleged that the STA violated several provisions of the New York and federal constitutions.

AAMC moved for summary judgment in October 1988. The State opposed the motion and cross-moved for dismissal of AAMC's pendent state constitutional claims. On January 12, 1990, the district court granted AAMC's motion for summary judgment and the State's motion to dismiss the pendent claims. *AAMC II,* 728 F.Supp. at 889. The court found that the STA's requirement that AAMC disclose its test materials conflicts with the copyright protection due those materials under the federal Copyright Act. It further found that this disclosure does not constitute a "fair use" of the MCAT under the Copyright Act. Accordingly, it concluded that the STA is preempted by the Copyright Act and permanently enjoined the State from enforcing the STA against AAMC. The court denied AAMC's request for attorney's fees and costs. This appeal and cross-appeal followed.

### DISCUSSION

#### I. *Defining the issue.*

As the district court stated, "[t]he central legal question presented is whether the disclosure requirements of New York's Standardized Testing Act clash with rights conferred upon plaintiff by the Federal Copyright Act of 1976, 17 U.S.C. § 101 *et seq.,* in a manner which compels this court to find the State Act invalid by virtue of the Supremacy Clause of the U.S. Constitution." *AAMC II,* 728 F.Supp. at 874. The Constitution's Supremacy Clause may compel invalidation of state law in several ways:

> First, Congress may in express terms declare its intention to preclude state regulation in a given area.... Second, in the absence of an express declaration, preemption may be implied when the federal law is "sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementing state regulation." ... Finally, state law may be preempted "to the extent that it actually conflicts with a valid federal statute."

*Darling v. Mobil Oil Corp.,* 864 F.2d 981, 985–86 (2d Cir.1989) (citations omitted). The third type of state law preemption enumerated in *Darling,* so-called "conflict preemption," occurs either when "'compliance with both federal and state regulations is a physical impossibility,' ... or where state law 'stands as an obstacle to the accomplishment and execution of the

full purposes and objectives of Congress.'" *Id.* at 986 (citations omitted); *see Perez v. Campbell*, 402 U.S. 637, 649, 91 S.Ct. 1704, 1711, 29 L.Ed.2d 233 (1971).

AAMC contends that the STA conflicts with its exclusive right to publish, copy and distribute MCAT materials, *see* 17 U.S.C. § 106 (1988), by requiring disclosure of those materials to test-takers and by facilitating public distribution of those materials. According to AAMC, this conflict between state law and federally-created rights renders the state law preempted. *See Goldstein v. California*, 412 U.S. 546, 559, 93 S.Ct. 2303, 2311, 37 L.Ed.2d 163 (1973); *Allied Artists Pictures Corp. v. Rhodes*, 496 F.Supp. 408, 441–42 (S.D.Ohio 1980), *aff'd in pertinent part*, 679 F.2d 656 (6th Cir.1982).

In response, the defendants argue that the disclosure envisioned by the STA does not infringe upon the copyrights held by AAMC. They argue that the STA merely facilitates "fair uses" of the copyrighted material and, therefore, is consistent with the federal Copyright Act, which contains a "fair use" defense to copyright infringement. *See* 17 U.S.C. § 107; *see also Sony Corp. of America v. Universal City Studios, Inc.*, 464 U.S. 417, 433, 104 S.Ct. 774, 784, 78 L.Ed.2d 574 (1984) ("[A]nyone who trespasses into [the copyright owner's] exclusive domain by using or authorizing the use of the copyrighted work ... 'is an infringer of the copyright.' [17 U.S.C.] § 501(a). Conversely, anyone who is authorized by the copyright owner to use the copyrighted work ... or who makes a fair use of the work is not an infringer of the copyright....").

"Our task is 'to determine whether, under the circumstances of this particular case, [the State's] law stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Jones v. Rath Packing Co.*, 430 U.S. 519, 526, 97 S.Ct. 1305, 1310, 51 L.Ed.2d 604 (1977) (citation omitted). Thus, we must determine whether the disclosure of the MCAT facilitated by the STA infringes on the copyrights held by AAMC. If the STA facilitates infringement, it conflicts with the federal Copyright Act and is preempted. Such a determination is made in light of the "fair use" defense since "[t]he existence of a hypothetical or potential conflict is insufficient to warrant the pre-emption of the state statute." *Rice v. Norman Williams Co.*, 458 U.S. 654, 659, 102 S.Ct. 3294, 3299, 73 L.Ed.2d 1042 (1982).

## II. *The fair use doctrine.*

■ It has long been recognized that certain unauthorized but "fair" uses of copyrighted material do not constitute copyright infringement. *See Harper & Row, Publishers, Inc. v. Nation Enterprises*, 471 U.S. 539, 549, 105 S.Ct. 2218, 2224, 85 L.Ed.2d 588 (1985) (defining fair use as "privilege ... to use the copyrighted material in a reasonable manner without [the copyright owner's] consent") (quoting H. Ball, *Law of Copyright and Literary Property* 260 (1944)); 3 M. Nimmer & D. Nimmer, *Nimmer on Copyright* § 13.05, at 13–79 (1990) ("*Nimmer on Copyright*"). This "fair use" doctrine "permits courts to avoid rigid application of the copyright statute when, on occasion, it would stifle the very creativity which that law is designed to foster." *Iowa State Univ. Research Foundation, Inc. v. American Broadcasting Cos.*, 621 F.2d 57, 60 (2d Cir.1980).

The fair use defense was expressly recognized in the Copyright Act of 1976, which codified factors relevant to determining the applicability of the doctrine. *See Nimmer on Copyright* § 13.05[A], at 13–82 to 13–83. Section 107 of the Copyright Act, in pertinent part, provides:

Notwithstanding the provisions of section 106, the fair use of a copyrighted work ... for purposes such as criticism, comment, ... scholarship, or research, is not an infringement of copyright. In determining whether the use made of a work in any particular case is a fair use the factors to be considered shall include—

(1) the purpose and character of the use, including whether such use is of a commercial nature or is for nonprofit educational purposes;

(2) the nature of the copyrighted work;

(3) the amount and substantiality of the portion used in relation to the copyrighted work as a whole; and

(4) the effect of the use upon the potential market for or value of the copyrighted work.

17 U.S.C. § 107. "The factors enumerated in [section 107] are not meant to be exclusive: '[S]ince the doctrine [of fair use] is an equitable rule of reason, no generally applicable definition is possible, and each case raising the question must be decided on its own facts.'" *Harper & Row*, 471 U.S. at 560, 105 S.Ct. at 2230 (quoting H.R.Rep. No. 1476, 94th Cong., 2d Sess. 65, *reprinted in* 1976 U.S.Code Cong. & Admin.News 5659, 5679). "Fair use is a mixed question of law and fact." *Id.* at 560, 105 S.Ct. at 2230. Evaluation of the statutory fair use factors "in a particular case is obviously a fact specific inquiry for which summary judgment is ill-suited." *Diamond v. Am-Law Publishing Corp.*, 745 F.2d 142, 147 (2d Cir.1984); *accord DC Comics, Inc. v. Reel Fantasy, Inc.*, 696 F.2d 24, 28 (2d Cir.1982); *Meeropol v. Nizer*, 560 F.2d 1061, 1070–71 (2d Cir.1977), *cert. denied*, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 756 (1978).

In the present case, the district court appraised the statutory fair use factors in the following manner. Initially, it held that "the purpose and character of the use[s]" envisioned by the STA serve important public interests. *AAMC II*, 728 F.Supp. at 884–85. As the State explains, the STA is "intended to serve the public interest in the validity and objectivity of tests, to encourage development of better test instruments, and to assure the accuracy of the scoring process." The State does not seek to exploit disclosed MCAT materials commercially, *cf. Association of American Medical Colleges v. Mikaelian*, 571 F.Supp. 144, 151–53 (E.D.Pa.1983), *aff'd without opinion*, 734 F.2d 3 (3d Cir.1984), but rather to foster the "criticism, comment, ... scholarship, [and] research" contemplated by section 107. *See Maxtone-Graham v. Burtchaell*, 803 F.2d 1253, 1260 (2d Cir.1986), *cert. denied*, 481 U.S. 1059, 107 S.Ct. 2201, 95 L.Ed.2d 856 (1987).

Thus, the court concluded that the first "fair use" factor favors the position asserted by the State. *See Sony Corp. of America*, 464 U.S. at 449, 104 S.Ct. at 792. This conclusion is essentially uncontested by the parties, and we find no reason to disturb it.

■ Next, the district court held that "the second [fair use] factor cuts in favor of" AAMC, since the MCAT is an unpublished work. *AAMC II*, 728 F.Supp. at 885–86. *See New Era Publications Int'l v. Henry Holt and Co.*, 873 F.2d 576, 583 (2d Cir.1989), *cert. denied*, —— U.S. ——, 110 S.Ct. 1168, 107 L.Ed.2d 1071 (1990); *Salinger v. Random House, Inc.*, 811 F.2d 90, 97 (2d Cir.), *cert. denied*, 484 U.S. 890, 108 S.Ct. 213, 98 L.Ed.2d 177 (1987). On appeal, the State reiterates its contention that the MCAT does not fall within the traditional published/unpublished dichotomy because of the limited exposure to the test regularly granted to test-takers. However, we are inclined to agree with the district court that the secure nature of the MCAT weighs in favor of AAMC. *See National Conference of Bar Examiners v. Multistate Legal Studies, Inc.*, 692 F.2d 478, 486 n. 8 (7th Cir.1982) (in upholding validity of Copyright Office's secure test deposit regulation, court noted: "We agree with the Register of Copyrights that the [Multistate Bar Exam] would probably be classified as an unpublished work under 17 U.S.C. § 101...."), *cert. denied*, 464 U.S. 814, 104 S.Ct. 69, 78 L.Ed.2d 83 (1983); *Association of American Medical Colleges v. Mikaelian*, 571 F.Supp. at 153. Moreover, we recognize that the MCAT is not a mere compilation of facts; it is a "creative, imaginative, and original" work, *MCA, Inc. v. Wilson*, 677 F.2d 180, 182 (2d Cir.1981) (citation omitted), and reflects a substantial investment aimed at accurately discerning the aptitude of medical school applicants, *Association of American Medical Colleges v. Mikaelian*, 571 F.Supp. at 150.

Furthermore, the district court held that the third fair use factor, *i.e.*, "the amount and substantiality of the portion used in relation to the copyrighted work as a whole," *Harper & Row*, 471 U.S. at 564, 105 S.Ct. at 2232, favored AAMC's position.

*AAMC II,* 728 F.Supp. at 886–87. The State does not seriously contest this conclusion since the STA would permit comprehensive disclosure and distribution of the MCAT and related materials. Although the STA would not require disclosure of ungraded questions used solely for field-testing purposes, the amount and substantiality of disclosure desired by the State is obviously extensive. Thus, we are inclined to agree with the court's evaluation of the third fair use factor.

■ Finally, the district court considered the fourth fair use factor, *i.e.,* the "effect of the use upon the potential market for or value of the copyrighted work." 17 U.S.C. § 107(4). The fourth fair use factor is considered "the single most important element of fair use." *Harper & Row,* 471 U.S. at 566, 105 S.Ct. at 2233. It requires appraisal of whether *"some* meaningful likelihood of future harm [to the market for or value of the copyrighted work] exists. If the intended use is for commercial gain, that likelihood may be presumed. But if it is for a noncommercial purpose, the likelihood must be demonstrated." *Sony Corp. of America,* 464 U.S. at 451, 104 S.Ct. at 793; *see Salinger v. Random House,* 811 F.2d at 99; *Nimmer on Copyright* § 13.05[A], at 13–88.12. Adverse impact that results from criticism or unfavorable comment on the copyrighted work is not considered in evaluating this factor. *See New Era Publications Int'l v. Carol Publishing Group,* 904 F.2d 152, 160 (2d Cir.1990) (*"New Era II"*); *Consumers Union of United States, Inc. v. General Signal Corp.,* 724 F.2d 1044, 1051 (2d Cir.1983), *cert. denied,* 469 U.S. 823, 105 S.Ct. 100, 83 L.Ed.2d 45 (1984).

■ Applying these standards, the court held that "disclosure of the MCAT test questions would prevent them from being reused by the plaintiff." *AAMC II,* 728 F.Supp. at 888. Accordingly, it concluded that the disclosure and distribution contemplated by the STA "would seriously impair or even destroy the value of the copyrighted exams." *Id.* The State challenges this conclusion, and asserts that expert testimony to the contrary created genuine issues

of material fact that precluded summary judgment. We agree.

In opposition to AAMC's claim that disclosure would negatively affect the value of the MCAT, the State presented the testimony of Professor Walter M. Haney, Director of the Educational Technology Program at Boston College. Professor Haney testified that it was "entirely conceivable" that disclosed MCAT questions would be reusable. In a later affidavit, Professor Haney referred to a study concerning the effects of disclosure on performance on the Test of English as a Foreign Language ("TOEFL") which stated: "[a]s more and more disclosed TOEFL tests become available ... the effect of test disclosure should diminish to a negligible level, eventually allowing disclosed TOEFL items to be reused in institutional test forms." Professor Haney also testified that various equating strategies might be employed to reduce any scoring deviations resulting from reuse of MCAT questions. This testimony consisted of highly technical evaluations of alternative equating strategies, including embedded anchor test equating, item response theory equating, and section pre-equating. The district court dismissed this testimony as "irresolute" and "equivocal." *Id.* at 887, 888. While the trier of fact may ultimately reach this same conclusion, summary judgment is not the appropriate moment for resolving issues of witness credibility. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

Moreover, we reject the district court's conclusion that a copyright owner, such as AAMC, should not be "required to change its operations when another individual or entity is interfering with its ownership rights under the Federal Copyright Act in order to make the fair use exception fit." *AAMC II,* 728 F.Supp. at 888. Fair use is an "equitable rule of reason," *Harper & Row,* 471 U.S. at 560, 105 S.Ct. at 2230 (quotation omitted), which is not amenable to such mechanical application. Generally, a copyright owner should not be expected to take steps to minimize the potential harm that a particular unauthorized use

might cause to the copyrighted material's value. However, given the laudable goals of the State in enacting the STA, this is a case in which some accommodation by the copyright owner may be legitimately expected. *See MCA, Inc. v. Wilson*, 677 F.2d at 183 ("[W]here a claim of fair use is made, a balance must sometimes be struck between the benefit the public will derive if the use is permitted and the personal gain the copyright owner will receive if the use is denied.").

This case does not present the relatively straightforward situation in which the potential harm to a copyrighted work flows from direct competition with the assertedly fair use. In such circumstances, we have noted our concern that "creation will be discouraged if demand can be undercut by copiers." *Consumers Union*, 724 F.2d at 1051 (quoted in *New Era II*, 904 F.2d at 160). In the present case, however, the purported harm to the MCAT stems from a non-commercial, non-competing use. Moreover, the degree of potential harm to the MCAT and the availability of means to minimize that harm are sharply in dispute. Accordingly, there remain factual issues which deserve further elucidation before the district court.

### CONCLUSION

In light of the foregoing, we reverse the judgment of the district court, vacate the permanent injunction, and remand for further proceedings. The State shall be enjoined from enforcing the STA provisions against AAMC during the pendency of the remand proceedings.

Given our decision to remand this case to the district court, it would be inappropriate to address the State's contentions regarding the breadth of the court's injunction or AAMC's cross-appeal from the denial of attorney's fees. Accordingly, we express no view on those issues at this time.

MAHONEY, Circuit Judge, concurring in part and dissenting in part:

Addressing the issue as framed by the parties on appeal, I generally agree with my colleagues' conclusion that summary judgment was improper because there existed genuine issues of material fact regarding New York State's fair use defense. Because it is challenging noncommercial use by the state, AAMC has the burden of proving "that *some* meaningful likelihood of future harm [to marketability] exists." *Sony Corp. v. Universal City Studios*, 464 U.S. 417, 451, 104 S.Ct. 774, 793, 78 L.Ed.2d 574 (1984). I agree that Professor Haney's testimony was sufficient to create a factual issue in this regard, and that the availability of means to minimize any such harm is also in dispute. Further, at least two requirements of the STA—filing any research reports used in preparing the MCAT, and filing statistical reports that categorize scores by race and gender with a committee that reports to the state legislature—appear unrelated to the district court's concern with the AAMC's ability to reuse questions.

I write separately to express my doubt concerning a more fundamental aspect of the district court's opinion, the recognition of a preemption-type conflict between the STA and the Copyright Act. The district court reasoned as follows on this issue:

> [T]he New York statute will require the AAMC as owner of a copyrighted standardized test to disclose an exam which it wishes to retain as confidential. The State Act will also make the disclosed MCAT materials "public records" with respect to New York's Freedom of Information Law, and therefore subject these documents to reproduction and disclosure to members of the public. As such, unless the disclosure provisions of the New York statute fall into an exception to the exclusive rights of a copyright owner, those provisions will directly conflict with federal law and thereby be preempted.

*Association of Am. Medical Colleges v. Carey*, 728 F.Supp. 873, 881 (N.D.N.Y. 1990). My colleagues, apparently in substantial agreement with this analysis, conclude: "If the STA facilitates infringement, it conflicts with the federal Copyright Act and is preempted" (subject, of course, to

defenses, such as fair use, provided by the Copyright Act itself).

I would not find a fatal conflict so easily. There is a meaningful distinction between AAMC's exclusive right to reproduce and distribute its copyrighted MCAT and the business of administering, and evaluating students' responses to, the MCAT as a means of ranking medical school applicants. The former is protected by the copyright laws, and New York cannot create its own scheme whereby an author establishes and protects the reproduction and distribution of his work. But when the AAMC seeks to administer the MCAT and rank applicants on the results, it enters a field of conduct that, as I view the matter, New York may permissibly regulate. Specifically, it seems to me that New York may require that the author of such an examination surrender a limited amount of his copyright protection in exchange for the privilege of administering the examination within the state.

The district court addressed this matter briefly:

> Defendants ... contend that the State Act does not force [AAMC] to disclose the MCAT materials, but rather presents the AAMC with a choice: avoid disclosure by not administering the exam within New York or administer the MCAT within New York and be subject to the State's disclosure requirements. This argument, while of potential use in situations where the State is seeking to regulate an area left open by the federal government, has no merit where the State law is preempted by the federal law pursuant to the Supremacy Clause. A state may not answer an assertion of federal rights with the reply that one should go elsewhere to exercise those rights. *Cf. Capital Cities Cable v. Crisp,* 467 U.S. at 711, 104 S.Ct. at 2706.

728 F.Supp. at 888. There is, however, no federal regulation of standardized testing that would displace New York's statutory scheme. *Capital Cities,* by contrast, involved cable television, an area of pervasive federal regulation.

I would rule that a limited degree of interference with copyright privileges is permissible where a state, for purposes wholly unrelated to the policies that underly the protection of intellectual property, endeavors to regulate the manner in which an author markets his expression. Here, the chosen means of marketing the MCAT results in a secretive method of ranking medical school applicants. The State's policy is directed at that marketing strategy, and any interference with copyrights is incidental.

An analogy can be found in state statutes that regulate the licensing arrangements between movie distributors and theatre operators. In *Allied Artists Pictures Corp. v. Rhodes,* 496 F.Supp. 408 (S.D.Ohio 1980), *aff'd in pertinent part and remanded in part,* 679 F.2d 656 (6th Cir. 1982), Ohio had enacted a statute that, *inter alia:* (1) required distributors to provide potential exhibitors with a "trade screening" of a film prior to the commencement of bidding or negotiation for a license, and (2) prohibited distributors from exacting a minimum guaranteed payment in connection with any licensing agreement that based payments upon a division of box office receipts. 496 F.Supp. at 419–20. The distributors contended that the statute conflicted with the copyright protection of their films, and was accordingly preempted.

The district court rejected the preemption challenge, pointing out that "[t]he Supreme Court has long recognized the distinction between the rights composing copyright and the property produced and marketed by virtue of the copyright." *Id.* at 446. Reviewing cases that upheld the taxation and antitrust regulation of copyrighted materials, *id.* at 446–47, the court concluded that "[t]he authority of the states to regulate market practices dealing with copyrighted subject matter is well-established." *Id.* at 447.

With respect to the requirement of a trade screening, the distributors argued that the state statute unlawfully compelled a performance, an exclusive right under the Copyright Act. In rejecting this posi-

tion, the *Allied Artists* court engaged in the same analysis that the defendants herein urged upon the district court below:

> [T]he trade screening requirement only affects copyright holders who wish to license their films in Ohio; it does not compel performance in any other circumstances.
>
> The provision does not deprive the plaintiffs of their right to decide whether or not to perform the work publicly.... [T]he plaintiffs are free to choose not to perform their work publicly, and may continue to enjoin others from performing it. Thus they retain complete control over the rights granted by the Copyright Act: to prohibit display, performance, reproduction and distribution. It is only *after* the copyright owner has made the decision to perform the work—to release the motion picture—in Ohio that the Ohio Act steps in and compels a performance before exhibitors as a condition to the distribution of films in Ohio.

496 F.Supp. at 447.

On appeal, the Sixth Circuit expressly adopted the analysis of the Ohio district court with respect to the distributors' copyright preemption challenge. *See* 679 F.2d at 662–63 & n. 4. Further, in addressing a similar Pennsylvania statute against which the same copyright preemption argument was advanced, the Third Circuit "agree[d] with the framework of analysis set forth by the Ohio district court and adopted by the Sixth Circuit [in *Allied Artists* ]." *Associated Film Distribution Corp. v. Thornburgh*, 683 F.2d 808, 816–17 (3d Cir. 1982); *see also Associated Film Distribution Corp. v. Thornburgh*, 614 F.Supp. 1100, 1121–24 (D.Pa.1985) (following *Allied Artists* and finding no preemption), *aff'd*, 800 F.2d 369 (3d Cir.1986), *cert. denied*, 480 U.S. 933, 107 S.Ct. 1573, 94 L.Ed.2d 765 (1987); *Warner Bros., Inc. v. Wilkinson*, 533 F.Supp. 105, 108 (D.Utah 1981) (similar ruling), *appeal dismissed and case remanded*, 782 F.2d 136 (10th Cir.1985).

In sum, I cannot agree that a preemptive conflict between the Copyright Act and the STA results if the STA is deemed to "facilitate" copyright infringement, subject only to the defenses accorded by the Copyright Act. Rather, I would direct the district court to address the threshold preemption question on remand in accordance with the principles and authorities set forth hereinabove.