Marc BROWN, Marc Brown Associates Limited Partnership, and Arthur Worldwide Corp., Plaintiffs,

v.

IT'S ENTERTAINMENT, INC. and Steven Newfield, Defendants.

No. CV 99–528(TCP).

United States District Court, E.D. New York.

Feb. 8, 1999.

**856**

McMillan, Rather, Bennett & Rigano, P.C. by Michael C. Schmidt, Melville, NY, for plaintiffs.

Peabody & Brown by Jason C. Kravitz, Boston, MA, pro hac vice.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

Before the Court, sitting in its miscellaneous capacity, is a Motion for a preliminary injunction by Plaintiffs Marc Brown, Marc Brown Associates Limited Partnership, and Arthur Worldwide Corporation (collectively "plaintiffs"). Plaintiffs seek to enjoin defendants from copying or using in any way plaintiffs' trademark cartoon characters. For the reasons stated below, plaintiffs' Motion is granted.

## I. BACKGROUND

This is an action to enjoin and redress injury from unfair competition and infringement brought pursuant to the Lanham Act (15 U.S.C. § 1051 *et seq.*), 17 U.S.C. § 101 *et seq.*, and common law. Plaintiff Marc Brown is a Massachusetts resident and the creator of a child's cartoon character named "Arthur." Plaintiff Marc Brown Associates Limited Partnership is a Massachusetts Limited Partnership with its principal place of business in Hingham, Massachusetts. Plaintiff Arthur Worldwide Corporation is a Massachusetts corporation with its principal place of business in Hingham, Massachusetts. Defendant Steven Newfield ("Newfield") is allegedly a principal of the defendant New York corporation It's Entertainment, Inc. ("IEI"), which has its principal place of business in Baldwin, New York. According to counsel for the plaintiffs, IEI is engaged in the business of procuring costumes and costumed entertainers for parties and promotional events.

"Arthur" (a cartoon aardvark), "D.W." (Arthur's sister), and "Puppy Pal" (their dog) (collectively "the Arthur Characters") are children's cartoons. Arthur and D.W. are subject to federal trademark registration. The Arthur Characters are the subject of many books and a television show. An indication of their popularity is provided by the following facts alleged in the Verified Complaint: (1) Arthur and D.W. appeared on the cover of the FAO Schwartz 1998 holiday catalogue; (2) there are sixty *Arthur* books which have sold over 23 million copies and which are consistent bestsellers according to *Publisher's Weekly;* (3) the *Arthur* television show earns higher ratings than *Sesame Street* and *Barney;* (4) Arthur was the lead balloon in the 1997 Macy's Thanksgiving Day Parade; and (5) the Arthur Characters were featured on the cover of the March 1998 edition of *TV Guide.*

Plaintiffs allege that, with a few very limited exceptions for charitable and promotional purposes, they have not licensed any adult costumes bearing the likeness of the Arthur Characters because of their concern that the Arthur Characters' image remain appropriate for children and because of the difficulty in exercising control over the licensed costumes and performers. (Verif.Compl.¶¶ 26–29.) Despite this policy, plaintiffs allege that in the Fall of 1998 they discovered that IEI was using un-licensed Arthur costumes for live entertainment and promotional appearances. In particular, IEI had rented an Arthur costume to a toy store on Long Island in September 1998 for use at the toy store's grand opening. (Verif.Compl.Exh.5.)

Upon learning of this action, plaintiffs sent a letter demanding that IEI cease the practice immediately, surrender the Arthur costume, and respond in writing within ten days. On October 20, 1998, Newfield responded to plaintiffs' letter as follows:

> In response to your letter that this company has been selling and/or renting costumes that are substantially and confusingly similar to the Arthur characters, we would like you to know that this company

neither owns nor sells nor rents anything resembling Arthur or anything connected with Arthur. The picture you enclosed was that of a performer we subcontracted in response to the request of a client. That performer's ad in the small publication we found him [sic] is no longer there and as far as we could find out he is no longer in business.

(Verif.Compl.Exh.6.)

IEI allegedly refused to provide the plaintiffs with any other information concerning the subcontractor who appeared at the toy store. Thereafter plaintiffs filed a Verified Complaint on January 27, 1999 charging four counts of unfair competition and infringement.

## II. DISCUSSION

Pursuant to Rule 65(b) of the Federal Rules of Civil Procedure, plaintiffs move for the issuance of a preliminary injunction preventing IEI and Newfield from reproducing, copying, or otherwise using the Arthur Characters in any way, in addition to other matters. Defendants have not opposed this Motion, and did not appear at the hearing on the preliminary injunction held before this Court on February 5, 1999.

### A. Issuance of Preliminary Injunction

#### 1. Standard for Preliminary Injunctive Relief

No preliminary injunction shall be issued without notice to the adverse party. FeDR. Civ.P. 65(a)(1). Such notice has been given to the defendants. In order to be entitled to preliminary injunctive relief, plaintiffs must show that: (1) they will suffer irreparable harm absent the relief requested; (2) either they have a likelihood of success on the merits or there are sufficiently serious questions regarding the merits as to make them a fair ground for litigation; and the balance of hardships tips decidedly in their favor. *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979); *Jordache Enterprises, Inc. v. Levi Strauss & Co.,* 841 F.Supp. 506, 521 (S.D.N.Y.1993).

#### 2. Likelihood of Success on the Merits

Plaintiffs' Verified Complaint sets forth the following counts: (1) unfair competition as a result of direct and contributory trademark infringement, and false designation of origin in violation of 15 U.S.C. §§ 1114 and 1125(a); (2) unfair competition as to famous mark dilution in violation of 15 U.S.C. § 1116; (3) direct and contributory copyright infringement in violation of 17 U.S.C. § 101 *et seq.;* and (4) common law unfair competition.

##### a. Copyright Infringement

A *prima facie* claim of copyright infringement requires a showing by the claimant that: (1) the claimant owns a valid copyright, and (2) the defendant has copied the original copyrighted material without permission. *Fonar Corp. v. Domenick,* 105 F.3d 99, 103 (2d Cir.1997). Copyright certificates constitute *prima facie* evidence of copyright ownership. *Id.* at 104. Where claimant has no direct proof of copying it may be proved by showing that: (1) the defendant had access to the copyrighted work, and (2) the offending article is substantially similar to the copyrighted work. *Streetwise Maps, Inc. v. Vandam, Inc.,* 159 F.3d 739 (2d Cir.1998). Copyright infringement is established where an average lay observer would recognize the alleged copy as having been appropriated from the copyrighted work. *Ideal Toy Corp. v. Fab-Lu, Ltd.,* 360 F.2d 1021, 1022 (2d Cir.1966).

Here, plaintiffs have provided ten certificates copyrighting "Arthur" in its various manifestations including audio tapes, storybooks, and items bearing Arthur's image such as clothing and bags. (Verif.Compl.Exh.2.) While there is no direct proof of copying, there is little doubt that defendants had access to the Arthur Characters given the facts described regarding their prominence in the field of children's entertainment. Further, a comparison of the photograph provided of the offending costume, (Verif.Compl.Exh.5), and the image provided as an example of plaintiff's version of Arthur, (Verif.Compl.Exh.3), reveals an obvious similarity. Moreover the circumstances of the costumed appearance at the toy store opening strongly suggest that the intent behind

the resemblance was to exploit Arthur's popularity for the store's promotional purposes.

The above facts establish likely success on a claim for copyright infringement against an indefinite defendant: it remains to be seen whether IEI was the actual infringer because it alleges that it merely 'sub-contracted' the Arthur impersonator. Nonetheless, even allowing for the fact that IEI might not itself have infringed plaintiffs' trademark, the contributory infringement law discussed below justifies injunctive relief against IEI.

### b. Contributory Copyright Infringement

Contributory liability for infringement attaches where a party, "with the knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another." *Gershwin Pub. Corp. v. Columbia Artists Management Inc.*, 443 F.2d 1159, 1162 (2d Cir.1971). Here, IEI admitted to 'subcontracting' the Arthur impersonator for the toy store appearance. There is still a question whether IEI knew what costume the impersonator was to wear, and whether IEI knew that the impersonator was infringing the plaintiff's copyrights. Nevertheless, these facts raise 'sufficiently serious questions regarding the merits as to make them fair ground for litigation' because IEI has benefitted from the transaction and should not be allowed to avoid liability. *Jackson Dairy*, 596 F.2d at 72.

### c. Trademark/Trade Dress Infringement

A trademark is defined as "any word, name, symbol, or device or any combination thereof ... used by a person ... to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown." 15 U.S.C. § 1127. A trademark infringement claim requires a showing that the mark is entitled to protection because it is either inherently distinctive or has acquired secondary meaning in the relevant market. Plaintiffs must also show that the unlicensed costume will cause confusion as to its origin, source, or sponsorship. *The Paddington*

*Corp. v. Attiki Importers and Distributors, Inc.*, 996 F.2d 577, 582 (2d Cir.1993).

"Marks are often classified in categories of generally increasing distinctiveness"; following the classic formulation set out by Judge Friendly, they may be (1) generic; (2) descriptive; (3) suggestive; (4) arbitrary; or (5) fanciful ... [t]he latter three categories of marks, because their intrinsic nature serves to identify a particular source of a product, are deemed inherently distinctive and are entitled to protection. *Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615 (1992) (citing *Abercrombie & Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2d Cir.1976)). Marks such as the 'Batman' comic-book character have been found fanciful. *See D.C. Comics, Inc. v. Reel Fantasy, Inc.*, 539 F.Supp. 141, 143 (S.D.N.Y.), *rev'd on other grounds*, 696 F.2d 24 (1982).

Claims under 15 U.S.C. §§ 1114(1) and 1125(a) and common law trademark infringement center around "the showing of likelihood of confusion as to the source or sponsorship of defendant's products." *Standard and Poor's Corp. v. Commodity Exchange, Inc.*, 683 F.2d 704, 708 (2d Cir.1982). In the preliminary injunction context, a showing of likelihood of confusion as to source or sponsorship establishes the requisite likelihood of success on the merits as well as risk of irreparable harm. *Id.*

Factors to be considered in determining whether there exists a likelihood of confusion as to the source of plaintiff's product include: (1) the strength of plaintiff's mark; (2) the similarity of the marks; (3) the proximity of the products; (4) likelihood that the earlier mark owner will bridge the gap by entering the defendant's market; (5) the sophistication of prospective buyers; (6) actual confusion; (7) defendant's good faith in adopting the mark; and (8) quality of the defendant's product. *Id.* (citing *Polaroid Corp. v. Polarad Elecs. Corp.*, 287 F.2d 492, 495 (2d Cir.1961)).

Plaintiffs advance plausible arguments as to why Arthur has attained secondary meaning in the market place, thereby entitling him to protection, (Pl.'s Mem. in

Supp. at 9), but because Arthur is clearly arbitrary or fanciful, these arguments are not discussed herein. Like Batman, Arthur appears to be a whimsical and arbitrary creature: a stylized aardvark dressed like a schoolboy. As such he is entitled to protection under the Lanham Act. *Two Pesos,* 505 U.S. at 768, 112 S.Ct. 2753; *D.C. Comics, Inc.,* 539 F.Supp. at 143. Furthermore, application of the relevant *Standard and Poor's* factors to the circumstances reveals a clear likelihood of confusion as to the source of the product. The strength of the mark is established by its renown, discussed *supra;* the image and photographs supplied (Verif.Compl.Exhs.3, 5) reveal a distinct similarity between the real and ersatz Arthurs; a lack of good faith by defendants is apparent in their attempt to suggest an endorsement of or attraction to the store by the real Arthur; and parents (and certainly children) are most likely unable to discern whether or not the defendants were acting with plaintiffs' approval. Notwithstanding the question of who actually did the infringing, discussed *supra,* in view of the evident contributory nature of defendants' conduct, the merits of this claim constitute a fair ground for litigation.

### d. Contributory Infringement of Trademark/Trade Dress

"A distributor who intentionally induces another to infringe a trademark, or continues to supply its product to one whom it knows or has reason to know is engaging in trademark infringement, is contributorily liable for any injury." *Polymer Technology Corp. v. Mimran,* 975 F.2d 58, 64 (2d Cir.1992).

While in this Circuit, this doctrine does not appear to have been expressly extended to situations like the present case, the facts at bar warrant application of the doctrine. IEI is analogous to a distributor in that it is apparently a provider of entertainers for various events. As such it may well have 'supplied its product'—by subcontracting a job—to one whom it knew or had reason to know was an infringer. *See Polymer Technology Corp.* 975 F.2d at 64. If IEI knew of the infringement it would be liable for any injury to plaintiffs under the doctrine. Therefore

this is a 'serious question regarding the merits' for litigation. *Jackson Dairy,* 596 F.2d at 72.

### e. Famous Mark Dilution

"Dilution is grounded on the idea that a trademark can lose its 'ability . . . to clearly and unmistakably distinguish one source' through unauthorized use." *Hormel Foods Corp. v. Jim Henson Prod., Inc.,* 73 F.3d 497, 506 (2d Cir.1996) (citations omitted). The claim has two requisite elements: (1) ownership of a distinctive mark, and (2) a likelihood of dilution. *Id.* Dilution may occur either by 'blurring' or 'tarnishing.' *Id.* Blurring occurs when a claimant's mark is used on a number of different goods so that they are unable to tell the true source so that the mark loses its "ability to stand as a unique identifier of the plaintiff's product," *id.,* and tarnishing of a product occurs when it is "linked to products of shoddy quality, or is portrayed in an unwholesome or unsavory context, with the result that the public will associate the lack of quality or lack of prestige in the defendant's goods with the plaintiff's unrelated goods." *Id.* at 507 (citation omitted).

Plaintiffs have shown a likelihood of success on this claim because they have established Arthur's fame, and because there is a clear likelihood of dilution. Should unauthorized Arthur impersonators proliferate, espousing a multitude of causes, some potentially unwholesome, the image sought by the plaintiffs for Arthur will be difficult to control and might easily become blurred or tarnished, resulting in a loss of credibility, public affection, and consumer interest.

### 3. Irreparable Harm to the Plaintiffs

In the preliminary injunction context for Lanham Act claims, a showing of likelihood of confusion as to source or sponsorship establishes the requisite likelihood of success on the merits as well as risk of irreparable harm. *Standard and Poor's Corp. v. Commodity Exchange, Inc.,* 683 F.2d 704, 708 (2d Cir.1982). Accordingly the Court presumes irreparable harm to be established for purposes of granting injunctive relief in this case.

### 4. Balance of Hardships

The facts before the Court suggest that defendants will suffer no countervailing harm from injunctive relief. The infringement appears to have been limited to one engagement; moreover IEI does not appear to obtain its business solely from Arthur impersonators, but apparently provides various types of costumed entertainment for various events. On the other hand, plaintiffs would have to contend with the erosion of Arthur's image were the infringement allowed to continue. Thus the balance of hardships in this case lies with the plaintiffs. Plaintiffs add that granting the relief requested would serve the public interest in protecting the effectiveness of copyrights, and cite non-binding authority to the effect that the public interest almost always favors the issuance of injunctions in copyright and trademark cases, *see Concrete Machinery Co. v. Classic Lawn Ornaments, Inc.*, 843 F.2d 600, 611 (1st Cir.1988).

### B. Terms of the Preliminary Injunction

Granting the plaintiffs' motion for a preliminary injunction, this Court hereby enjoins the defendants in the following manner:

1. defendants are preliminarily enjoined from selling, renting, or otherwise benefitting from plaintiffs' copyrights, trademarks, or trade dress, or any reproduction, counterfeit, copy, or colorable imitation thereof, in connection with any advertising, rental, or sale of costumes or party entertainment;

2. defendants are preliminarily enjoined from arranging, orchestrating, organizing, participating in, or otherwise benefitting from another's sale, rental, or unauthorized use of plaintiffs' copyrights, trademarks, or trade dress, or any reproduction, counterfeit, copy, or colorable imitation of plaintiffs' copyrights, trademarks, or trade dress, in connection with any advertising, rental, or sale, of costumes or party entertainment;

3. defendants are preliminarily enjoined from creating any reproduction, counterfeit, copy, or colorable imitation of plaintiffs' copyrights, trademarks, and trade dress;

4. defendants are preliminarily enjoined from passing off or inducing, enabling, or assisting others in passing off, selling or renting any reproduction, counterfeit, copy, or colorable imitation of plaintiffs' copyrights, trademarks, or trade dress;

5. defendants are preliminarily enjoined from removing, destroying, disposing of, altering, or inducing others to remove, destroy, dispose of, or alter any reproduction, counterfeit, copy, or colorable imitation of plaintiffs' copyrights, trademarks, or trade dress in defendants' possession, custody, or control; and

6. defendants are preliminarily enjoined from removing, destroying, disposing of, altering, or inducing others to remove, destroy, dispose of, or alter any financial or business records of any kind whatsoever concerning in any way the reproduction, counterfeiting, copying, or colorable imitation of plaintiffs' copyrights, trademarks, or trade dress or the advertising, purchasing, distributing, selling, or renting thereof.

## III. CONCLUSION

Because: (1) plaintiffs have demonstrated either a likelihood of success on, or a serious question as to the merits and the balance of hardships lies with the plaintiffs; and (2) irreparable harm may be presumed where plaintiffs have demonstrated a likelihood of success on the merits in trademark infringement contexts, plaintiffs have met the requirements for a preliminary injunction. Accordingly plaintiffs' Motion is granted and defendants are hereby preliminarily enjoined under the terms set forth in Part Two of this Order.

SO ORDERED.